NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0560n.06
Filed: August 8, 2007

**Nos. 06-5319/06-5362**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

NANCY WILLIS and
VICKIE HERRON,

     **Defendants-Appellants.**

                                 /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE**

**BEFORE:**    **CLAY and SUTTON, Circuit Judges; and GREER, District Judge.**[*]

    **CLAY, Circuit Judge.** Defendants Nancy Willis ("Willis") and Vickie Herron ("Herron"),

appeal their convictions and sentences. On October 21, 2005, in connection with seven armed

robberies, Defendants were convicted by a jury of interfering with commerce by means of robbery,

in violation of 18 U.S.C. § 1951; carrying a firearm in connection with a crime of violence, in

violation of 18 U.S.C. § 924(c); and conspiracy, in violation of 18 U.S.C. § 371. On February 27,

2006, Herron was sentenced to a term of imprisonment of 140 months; and on February 28, 2006,

---

    [*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

Willis was sentenced to a term of imprisonment of 1,920 months, or 160 years. For the reasons set forth below, we **AFFIRM** Defendants' convictions and sentences.

## BACKGROUND

Willis was convicted of robbing seven women's clothing stores in or near Memphis, Tennessee between July 5, 2003, and July 3, 2004. (J.A. 62-78) Herron was convicted for participating in the July 3, 2004, robbery. The facts underlying each robbery are set forth below.

## I. First Robbery

On July 5, 2003, Willis robbed Fashion Cents in Memphis, Tennessee, approximately ten minutes before the store closed at 8:00 p.m. Melissa Williams ("Williams"), a store employee, observed Willis "walk[ing] around and [ ] shopp[ing] for clothes." (J.A. 607) Willis "brought the clothes up the registered [sic], [and] she laid them down on the counter." (J.A. 607) Willis "walked around and [ ] looked at [ ] shoes and then when she came back around [a] panty rack she had [a] gun out." (J.A. 608) Willis "pulled the gun out on [Williams] and she told [Williams] to tell [a store] employee to get in the dressing room." (J.A. 608) Willis "told [Williams] to put all of the money in [a] bag with the clothes" she selected, threatened "to blow [Williams'] brains out," and "directed [Williams] to get in the dressing room with the [other] employee after [Williams] put the money in the bag." (J.A. 609) Willis left the store taking $1100 in cash and clothing.

## II. Second Robbery

On September 6, 2003, Willis robbed Cato in Millington, Tennessee. As with the first robbery, Willis entered the store a short time before closing time and "was in the[ ] [store] shopping," (J.A. 491), for "plus sizes," (J.A. 733). At the time of the robbery, two employees, Lori

Woodward ("Woodward") and Ashley Smith ("Smith"), were in the store. Willis "came up to the register with an arm load of clothes and came up to check out." (J.A. 492) As Woodward "was ringing her up . . . . she pulled a gun." (J.A. 492) "[Willis] made [Woodward] get in the dressing room and shut the door." (J.A. 492) "[Willis] put something on [Smith's] back which [Smith] believe[d] [was] a gun" because "[i]t felt like something hard against [her] back." (J.A. 493) Woodward testified that Willis used a "black pistol" during the robbery. (J.A. 738) "[Willis] made [Smith] give her the money in both registers and then [Willis] made [Smith] go and get in the dressing room." (J.A. 493) Willis left the store with approximately $1800 and "a bunch of clothes." (J.A. 494) At trial, Smith's testimony was consistent with Woodward's testimony. *Compare* J.A. 491-94 *with* J.A. 732-37.

**III. Third Robbery**

On October 5, 2003, Willis robbed another Cato store in Memphis, Tennessee. As in the first and second robberies, Willis arrived "right before [ ] closing time" and selected clothing. (J.A. 565) Willis "came up to the register and laid her clothing." (J.A. 568) As Carla West ("West"), the store manager, "was still ringing her up, [Willis] came on the opposite [side] of the register that [West] was on, and . . . pulled the gun." (J.A. 568) "[Willis] told [West] to give her the money. And [West] said no." (J.A. 568) Willis asked for the money again, but West again "said no." (J.A. 568) After the second refusal, "[Willis] said give me the money or I'm going to blow your fucking head off." (J.A. 568) After obtaining the money, Willis directed West and the other store employee to go into "the fitting room." (J.A. 570) Willis left with the money and "two jogging outfits which would include a jacket and a pair of pants." (J.A. 570)

3

### IV. Fourth Robbery

On May 8, 2004, Willis robbed Holliday Fashions in Memphis, Tennessee. Tilisha Williams ("Tilisha"), the store manager, was present during the robbery. According to Tilisha, "[t]hree females" robbed the store and she "distinctly noticed the older lady, the heavyset lady," (J.A. 624), who "was very heavy especially around the waist," (J.A. 632). "[T]he older heavier-set lady was just walking around in the career section. And the younger two [women] were in the back picking out clothing. And when they came up to the counter, they had two hands full of clothing." (J.A. 625) "[Tilisha] was standing [ ] at the counter having a conversation with the two younger girls" when "the older lady escorted . . . [an] employee[ ] to the front with a gun at her back." (J.A. 626-27) "[O]ne of the younger girls . . . told [Tilisha] to go ahead and start putting the clothes in bags. And right after that the heavyset lady came around the cash wrap and told [Tilisha] to open up the registers" and "the safe." (J.A. 627-28) (format omitted). Willis forced the store employees "in[to] the layaway room and [ ] closed the door." (J.A. 630) In this robbery, Willis and her partners took "cash and clothes . . . [and] some personal items." (J.A. 631-32)

### V. Fifth Robbery

On May 30, 2004, Willis robbed another Fashion Cents store in Memphis, Tennessee. As in the fourth robbery, Willis was accompanied by two other women. Willis and the two other women entered the store "[r]ight before [the] closing time" and selected clothing. (J.A. 454) Sharon Scarbrough ("Scarbrough"), the store manager, "went up to the register and started ringing out one of the young ladies. [Scarbrough] started taking off the sensors and the hangers and scanning it."

(J.A. 457) "[T[he heavyset lady came behind [Scarbrough] and put one foot behind the counter." (J.A. 458) "[Scarbrough] continued to ring, and then [Willis] made a sound, she went psst, psst, real loud. [Scarbrough] was . . . not turning around . . . . [and] sat there playing stupid ringing and then [Willis] did it again real loud." (J.A. 458-59) "[Scarbrough] grabbed a shirt and [ ] said it did not have a tag on it." (J.A. 459) She "put the shirt between [her] and the heavyset lady and tried to bend down to hit the panic button," but "[Willis] said, don't hit that button, bitch." (J.A. 459) "[Willis] grabbed [Scarbrough] by [the] arm and slung [her] against [a] shoe wall and [she] hit it, kind of [falling] back a little bit." (J.A. 460) Willis and her partners were armed and placed the store employees "in the fitting room." (J.A. 460) They took $2,911 and one of the "largest shopping bags . . . fill[ed] up [with] just tons of clothing." (J.A. 462) The stolen merchandise had security sensors attached to it.

## VI. Sixth Robbery

A day after the fifth robbery, on May 31, 2004, Willis and her accomplices robbed another Holliday Fashions store in Millington, Tennessee. Willis and the two other women used the same strategy: they entered the store approximately "10 or 15 minutes" before the store closed, (J.A. 111), selected clothing, "walked up to the counter with an arm load of clothes," (J.A. 113), and brandished a firearm as the employees were "exchanging hangers and taking the sensors off," (J.A. 111). The robbers forced the store employees to go into "the fitting room," (J.A. 115), "lined [the employees] up . . . [and] told [them] that they were going to kill [them]," (J.A. 117). The robbers fled with approximately $1,500 and "several bags" full of merchandise. (J.A. 118) After the robbers left, the employees tried to call the police, but "[the robbers] had ripped all of the phones out of the walls and

[the employee's] purses were gone." (J.A. 116) The store manager, Ivy Bodry, had "money orders to pay [her] rent" in her purse, (J.A. 120), that were "made out to Smith Investments," (J.A. 121).

**VII. Seventh Robbery**

Last, on July 3, 2004, Willis robbed another Holliday Fashions store in Memphis, Tennessee. This store is located next to the Cato store Willis robbed during the third robbery. In this robbery, Willis was assisted by Herron. Defendants entered the store a short time before closing, selected clothing and other items, and brandished a firearm at the cash register. Defendants forced three store employees, Kathryn Guzman ("Guzman"), Ashley Johnson ("Johnson"), and Sarah Tate ("Tate"), into the dressing room, and took money, clothing, jewelry and sunglasses.

Jared Huey ("Huey"), the boyfriend of a store employee, observed Defendants leaving the store "with three or four bags in each hand" and driving away in a red Pontiac Grand Am with license plate number QWS399. (J.A. 340) Huey entered the store and found the employees. Law enforcement officials determined that the vehicle was a rental car that was rented to a woman who lived at 924 Barbara Drive, Memphis, Tennessee. On July 5, 2004, detectives went to the address and discovered that it was the residence of Willis and her mother. Detectives spoke to Willis' mother and requested that she contact Willis. Willis arrived in the vehicle and was arrested.

Law enforcement officials discovered "numerous sunglasses, earrings, jewelry box, [and] clothing," in Willis' home with Fashion Cents and Holliday Fashions "price tags or . . . [security] sensors." (J.A. 174) The stolen merchandise was connected to the fifth and seventh robberies. Police also discovered two money orders in Willis' purse made out to Smith Investments.

After Willis was arrested, store employees identified Willis from a photographic array as a robber in connection with the armed robberies. In February 2005, police determined that Herron, Willis' neighbor, assisted in the seventh robbery. Store employees identified Herron from a photographic array as one of the robbers involved in the seventh robbery.

On March 8, 2005, a federal grand jury in the Western District of Tennessee returned a seventeen-count indictment against Defendants. The indictment contained seven counts against Willis, and one count against both Willis and Herron, for interfering with commerce by threat or violence, in violation of 18 U.S.C. § 1951; seven counts against Willis, and one count against both Willis and Herron, for using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of conspiracy, in violation of 18 U.S.C. § 371, against both Willis and Herron.

Defendants were tried together before a jury on October 17, 2005. At trial, store employees testified against Defendants. On October 21, 2005, the jury returned a guilty verdict against Defendants on all charges. On February 27, 2006, Herron was sentenced to a term of imprisonment of 140 months. Willis was sentenced to a term of imprisonment of 160 years on February 28, 2006. Defendants filed timely notices of appeal. This Court has consolidated Defendants' appeals.

**DISCUSSION**

I.    **Willis's Motion to Sever Counts of the Indictment**

Willis argues that the district court erred in denying a motion to sever the counts in the indictment. This Court reviews a district court's denial of a motion to sever counts of an indictment

for abuse of discretion. *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007); *see also United States v. Jacobs*, 244 F.3d 503, 506-07 (6th Cir. 2001).

Under Rule 8(a) of the Federal Rules of Criminal Procedure,

> [an] indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

However, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); *see also United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) ("[e]ven when joinder is appropriate under Rule 8(a), a district court may, in its discretion, grant the defendant a severance if it appears that the defendant is prejudiced by a joinder of the offenses.").

This Court has found that "[t]he resolution of a Rule 14 motion is left to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Hang Le-Thy Tran*, 433 F.3d at 478 (citing *United States v. McCoy*, 848 F.2d 743, 744 (6th Cir. 1988)). "To establish an abuse of discretion," a defendant must make "'a strong showing of prejudice.'" *Id.* (quoting *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985)). "The movant must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "[A] defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

As a threshold matter, the government argues that Willis failed to renew the severance motion at the end of the evidence. The failure to renew a severance motion may result in a waiver of the motion. "[T]his [Court] is barred from ruling on the merits of appellants' claim . . . . [because] a motion to sever counts or co-defendants is deemed waived if it is not renewed at the end of the evidence." *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir. 1995) (citation omitted). "This procedure allows the trial court to assess whether joinder was in fact prejudicial, and prevents a defendant from deliberately failing to make a meritorious motion to wait and see what verdict the jury returns." *Id.* (citations omitted). In the instant case, Willis is procedurally foreclosed from raising this claim because she did not renew the severance motion at trial.

Even if we assume *arguendo* that Willis preserved this claim, we find that the district court did not abuse its discretion in denying the severance motion. Willis argues that "no reasonable juror could distinguish between the evidence presented on each of the various counts." (Willis' Br. at 29) Willis also contends that "it [was] impossible for the jury to se [sic] the cases as separate and distinct." (Willis' Br. at 30) Willis does not cite any facts or case law in support of these arguments. This Court has found that "absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *Hang Le-Thy Tran*, 433 F.3d at 478 (internal quotation marks and citation omitted). "Even if prejudicial spillover actually occurred, the defendant would still need to prove that such a spillover caused her substantial prejudice." *Id.* "A difference in the quantum of evidence as to the [different] counts is not grounds to overturn a denial of severance unless there is a substantial risk that the jury could not compartmentalize or distinguish between the evidence produced on each count." *Id.* (internal quotation marks and citation omitted).

9

Willis makes only conclusory allegations of prejudice; we therefore find that the district court did not abuse its discretion in denying the severance motion.

## II.     Double Jeopardy

Willis argues that she was placed in double jeopardy at trial. This Court reviews *de novo* the denial of a motion to dismiss presenting double jeopardy issues. *United States v. DeCarlo*, 434 F.3d 447, 452 (6th Cir. 2006) (citing *In re Ford*, 987 F.2d 334, 339 (6th Cir. 1992)).

"The Double Jeopardy Clause of the Fifth Amendment provides: . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *United States v. Engle*, 458 F.2d 1021, 1025 n.5 (6th Cir. 1972) (alteration in original) (internal quotation marks omitted). A "verdict of acquittal [i]s final, and could not be reviewed . . . without putting [a defendant] twice in jeopardy, and thereby violating the constitution." *Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (internal quotation marks and citation omitted). "The development of the Double Jeopardy Clause from its common-law origins . . . suggests that it was directed at the threat of multiple prosecutions." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977) (alteration in original) (internal quotation marks and citation omitted). "The Double Jeopardy Clause also accords nonappealable finality to a verdict . . . entered by judge or jury, disabling the Government from seeking to punish a defendant more than once for the same offense." *Id.* at 569 n.6. "At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression." *Id.* "The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling

him to live in a continuing state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* (internal quotation marks and citations omitted).

At trial, Willis argued that the government did not present sufficient evidence that a firearm was used during the robberies. In pertinent part, the record reflects the following colloquy:

| | |
|---|---|
| Counsel: | I would like to renew my motion for judgment of acquittal mainly as to the USC 924(c) matters. The government has put on no proof that these were, in fact, firearms under the definition of a firearm . . . . |
| . . . | |
| The Court: | . . . In looking at the 924(c) motion, I said yesterday that the testimony in the record combined with the . . . testimony that it was a weapon was sufficient, I thought, to get the case to the jury.<br><br>In the interim I have gone back and looked again at the . . . law and looked at the specific elements.<br><br>. . .<br><br>*I'm going to grant the defense motion regarding that charge --* |
| Government: | Judge, could I address you on some law on that? |
| The Court: | Sure. |
| . . . | |
| Government: | . . . All that is required is some evidence, such as the testimony of an observer, that would permit a reasonable jury to infer that the object carried by the defendant was a firearm.<br><br>. . .<br><br>And that is U.S. versus Jones, 907 Fed. 2d 456, and it's also Parker versus the United States, says the testimony of bank tellers who observed the weapon. |
| . . . | |
| The Court: | . . . When I focused on this case – on this situation earlier, I focused on the language of the statute . . . .<br><br>. . .<br><br>The government has to prove in this case that . . . a firearm was used in connection with a crime of violence. |

> Clearly the government has met its burden . . . to get the case to a jury that a crime of violence was committed because the witnesses all testified that people robbed them and that they had a gun.
>
> . . .
>
> But in looking more closely at these other cases, the Sixth Circuit seems to say that while a statutory definition is very technical, that this element can be satisfied by lay testimony . . . . th[e] testimony combined with [sic] they said they would blow my brains off is enough to get to the jury . . . . it will be up to the jury to decide whether or not the proof is . . . devoid . . . .
>
> . . .
>
> *So having read more closely these other cases and not just focusing on the statute and the commentary, as I did last evening, I will have to reverse that earlier ruling and allow the case to go to the jury.*

(J.A. 793-821) (emphasis and formatting added). As illustrated above, the district court appears to have reached a decision on Willis' motion, but reviewed case law to ensure that its holding was legally correct. After reviewing the relevant case law, the district court reversed its earlier ruling. Ultimately, the district court allowed the jury to decide whether Willis used a firearm in the robberies. Willis maintains that this reversal violated her double jeopardy rights. Willis offers no case law in support of this proposition. The record clearly indicates that the district court allowed the parties to present additional arguments and revisited pertinent case law to reach a determination. As the Second Circuit has recognized, "[a]n oral grant of a motion for acquittal is 'no more than an interlocutory order,' which the court has 'inherent power to reconsider and modify . . . prior to the entry of judgment.'" *United States v. Washington*, 48 F.3d 73, 79 (2d Cir. 1995) (quoting *United States v. LoRusso*, 695 F.2d 45, 52-53 (2d Cir. 1982)); *see also United States v. Byrne*, 203 F.3d 671,

674 (9th Cir. 2000) (holding that "double jeopardy does not bar a district court from revising a ruling on a motion for acquittal when that ruling is tentative or rendered subject to reconsideration.").

In the instant case, "the [district] court [ ] reversed its own ruling outside the jury's presence and in a timely fashion. Such conduct did not subject [Willis] to a 'second trial' or 'successive prosecution.'" *Washington*, 48 F.3d at 79 (citation omitted). Since the oral ruling was not final and was clearly subject to further argument and legal analysis, we find that Willis was not placed in double jeopardy.

## III. Sufficiency of the Evidence

Defendants maintain that the evidence presented at trial was constitutionally insufficient to support a conviction on any of the counts contained in the indictment. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (emphasis in original) (internal quotation marks and citations omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"'When reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony.'" *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)). "'Viewing the evidence in this manner, a jury verdict is supported by sufficient evidence if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Abboud*,

13

438 F.3d at 589); *see also United States v. Johnson*, 440 F.3d 832, 839 (6th Cir. 2006) (noting that this Court is "bound to make all reasonable inferences and credibility choices in support of the jury's verdict") (internal quotation marks and citation omitted). "'[A] defendant claiming insufficiency of the evidence bears a very heavy burden.'" *Jackson*, 473 F.3d at 669 (quoting *Abboud*, 438 F.3d at 589). "[P]hysical evidence is not required to sustain a conviction." *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002) (citing *United States v. Evans*, 883 F.2d 496, 501-02 (6th Cir. 1989)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999)); *see also United States v. Adams*, 265 F.3d 423 (6th Cir. 2001) (holding that "[c]ircumstantial evidence alone may sustain a conviction.").

## A.     Robbery Convictions

In the instant case, the government proffered ample evidence showing that Willis committed seven armed robberies. The government presented testimony from employees of the different stores that were robbed. "Victim eyewitnesses from all but one of the robberies positively identified Willis as the woman who robbed them." (Gov't Br. at 21)  As to the May 31, 2004 robbery where there was no positive eyewitness identification, police officers discovered money orders that were taken during the robbery in Willis' purse. Willis was seen leaving the scene of the last robbery and the police discovered stolen merchandise during Willis' arrest. Similarly, there was evidence that Herron assisted Willis in the last robbery and store employees identified Herron as one of the

robbers. Therefore, we find that the testimony of the store employees supports Defendants' convictions for the robberies.

### B.     Firearm Convictions

Defendants contend that there was insufficient evidence to support a conviction for using a firearm in a crime of violence. The use of a firearm in furtherance of a crime of violence triggers statutory mandatory minimum sentencing provisions set forth in 18 U.S.C. § 924. The statutory minimums contained in § 924 apply to

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm.

18 U.S.C. § 924(c)(1)(A). For purposes of this statute,

> [t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). The Supreme Court has found "that Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime." *Castillo v. United States*, 530 U.S. 120, 131 (2000).

In this case, the government did not introduce a firearm into evidence, and did not offer any photographic or video evidence that Defendants used a firearm during the robberies. However, store employees testified that they saw a firearm. Willis maintains that this witness testimony is

15

insufficient to prove that she used a firearm during the robberies, especially because the store employees are not experts on firearms. This contention is without merit. "Although § 924(c) requires proof that the gun is real, the government's proof need not reach a level of scientific certainty." *United States v. Roberson*, 459 F.3d 39, 47 (1st Cir. 2006) (internal quotation marks and citation omitted). Simply put, "[d]escriptive lay opinion testimony can be sufficient" to support a conviction under § 924. *Id.* (citing *United States v. Kirvan*, 997 F.2d 963, 966-67 (1st Cir. 1993)); *see also United States v. Dobbs*, 449 F.3d 904, 911 (8th Cir. 2006) (holding that "lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm under § 921(a)(3)(A)."); *Parker v. United States*, 801 F.2d 1382, 1385 (D.C. Cir. 1986) (holding that non-expert testimony constitutes "sufficient evidence to permit a reasonable jury to infer that the object carried by [defendant] was a 'firearm.'"); *United States v. Jones*, 907 F.2d 456 (4th Cir. 1990) (holding that "[a]s five eyewitnesses testified that a gun was used in the robbery, there was evidence from which rational triers of fact could find guilt beyond a reasonable doubt on the firearms charge."). In the instant case, the record clearly establishes that numerous store employees testified that Defendants brandished a firearm during the robberies. We find that Defendants' convictions and sentences under § 924 are supported by evidence in the record and the testimony of the store employees.

## C. Conspiracy Conviction

Defendants contend that there was insufficient evidence to support a conviction for conspiracy. Conspiracy to interfere with commerce by threats or violence, 18 U.S.C. § 1951, requires the following elements:

(1) an agreement between two or more individuals,
(2) affecting interstate commerce,
(3) to obtain property from another,
(4) with consent,
(5) induced under color of official right.

*United States v. Benton*, 852 F.2d 1456, 1465 (6th Cir. 1988). "In establishing the existence of a conspiracy to violate federal law, the government need not prove a formal agreement, because a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement." *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985) (citing *United States v. Toney*, 527 F.2d 716 (6th Cir. 1975). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* (citations omitted).

In this case, Defendants' conduct in connection with the seventh robbery clearly demonstrates a tacit understanding and agreement to rob the Holliday Fashions store on July 3, 2004. Defendants went to the store together, selected clothing, brandished firearms and worked together to intimidate store employees and rob the store. Defendants' conduct clearly indicates the adoption and implementation of a plan or strategy for the robbery. This plan evinces a conspiratorial agreement.

Defendants maintain that the government failed to prove that the conspiracy lasted "from on or about July 5, 2003 to on or about July 3, 2004," as alleged in the indictment. However, this Court has found that the exact date of the conspiracy is not an element of the crime. *See, e.g.*, *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989) (finding that "[a]lthough the particulars could have been more specific on the time frame, adequate notice was given to the defendant that the alleged conspiracy continued for some time."). Since Defendants' conduct in connection with the

17

seventh robbery indicates a conspiratorial agreement, Defendants' conviction for conspiracy is supported by evidence in the record.

### D.     Interference With Interstate Commerce

Willis argues that the government failed to prove an interstate commerce nexus with respect to merchandise stolen from Holliday Fashions. Contrary to Willis' averments, the record clearly indicates that Holliday Fashions is involved in interstate commerce. In pertinent part, the "[v]ice president of finance" for Holliday Fashions testified at trial as follows:

| | |
|---|---|
| Question: | . . . where is your headquarters? |
| Answer: | Here in Memphis . . . |
| Question: | Okay. And . . . where do you all have stores? |
| Answer: | We have stores in various states, in Mississippi, Tennessee, Louisiana, Arkansas . . . |
| Question: | And . . . is Holliday's [sic] Fashions . . . a business that does business across state lines? |
| Answer: | Absolutely. |
| . . . | |
| Question: | Does . . . Holliday's [sic] Fashions stores purchase goods from outside of Tennessee to sell it in stores in Tennessee? |
| Answer: | Yes, we do. |
| Question: | And do you have numerous out of state vendors? |
| Answer: | Yes, a majority of our vendors are out of state. |
| Question: | . . . what percentage would you say of the products in your stores from out of state? |
| Answer: | To be conservative it would be at least 90 percent. |
| . . . | |
| Question: | Do you all serve out of state customers? |
| Answer: | Yes, we do. |
| Question: | Is money that you lose in one of your robberies of one of your Tennessee stores money that you could use to buy goods from outside of Tennessee? |
| Answer: | Absolutely. |

(J.A. 150-52) (formatting added). The record clearly establishes that Holliday Fashions is engaged in interstate commerce. Willis argues that the government was required to prove specifically that

18

the merchandise stolen by Willis was manufactured outside of Tennessee. However, the government only has to prove that the business engages in interstate commerce. *United States v. Dupree*, 323 F.3d 480, 485 (6th Cir. 2003). Since the record shows that Holliday Fashions is engaged in interstate commerce, we find that Willis' claim is meritless.

## IV.     Cruel and Unusual Punishment

Willis maintains that the district court's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments because her sentence of 160 years is allegedly disproportionate to the underlying crime. This Court reviews *de novo* a constitutional challenge to a district court's sentence. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).

In interpreting the Eighth Amendment, "'[t]he Supreme Court has articulated a 'narrow proportionality principle' whereby it held that only 'extreme sentences that are grossly disproportionate to the crime are prohibited.'" *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 959-60 (1991)). In *Harmelin*, the Supreme Court upheld Michigan's penalty of life imprisonment without parole for possession of more than 650 grams of cocaine. The Supreme Court reaffirmed this holding in *Ewing v. California*, 538 U.S. 11, 28 (2003) (rejecting argument that "sentence of 25 years to life is unconstitutionally disproportionate to [an] offense of shoplifting three golf clubs") (internal quotation marks and citation omitted)).

This Court has adopted the "narrow proportionality principle" set forth in *Harmelin*, and recognized that "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583 (citing *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir.

1991)). In *Marks*, a case where Defendants were involved in nine armed bank robberies, this Court upheld a 2,242 month sentence. *Id.* This Court has made clear that "strict proportionality between a crime and its punishment is not required." *Id.* at 583 (citing *Harmelin*, 501 U.S. at 959-60). Supreme Court precedent supports this view. Indeed, in *Deal v. United States*, the Supreme Court upheld a 105-year sentence for six armed robberies finding that 18 U.S.C. § 924(c) required enhanced consecutive sentencing. 508 U.S. 129, 132-33 (1993).

Willis recognizes that "the majority of the sentence was driven by the mandatory [statutory] minimum requirements of § 924(c)," (Willis' Br. at 45), but argues that her "sentence was not developed to be proportional to the crime charged, but instead was driven by a blanket legislative decision that does not allow for a district court judge to sentence the defendant as their criminal culpability requires," *id*. at 42. As the district court acknowledged, "the mandatory minimums and the other counts do provide a sentence, accumulative sentence that is extremely harsh." (J.A. 855) However, as the district court aptly stated, this is "[C]ongress' doing and the court doesn't have the power to really adjust that." (J.A. 855) Simply put, "Congress has been very explicit in its dictates" and the district court is "unable to alter the [statutory] mandatory minimums." (J.A. 855) In light of the overwhelming Supreme Court precedent, we find that Willis' sentence is not cruel or unusual.

## V.      Reasonableness of the Sentence

Willis challenges the reasonableness of her sentence. This Court reviews a sentence imposed by a district court for reasonableness. *Rita v. United States*, No. 06-5754, – S. Ct. –, 2007 WL 1772146, at *9 (June 21, 2007); *United States v. Booker*, 543 U.S. 220, 261-62 (2005); *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005); *United States v. Cage*, 458 F.3d 537, 540 (6th Cir.

2006).  The Court reviews the district court's interpretations of the sentencing guidelines *de novo* and its factual finding for clear error. *United States v. Williams*, 411 F.3d 675, 677 (6th Cir. 2005); *United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003). The Court defers to the district court's application of the sentencing guidelines to the facts. *United States v. Charles*, 138 F.3d 257, 266 (6th Cir. 1998).

"In determining the sentence to be imposed, the district court must consider the advisory Guidelines range and all relevant factors identified in 18 U.S.C. § 3553(a)." *United States v. Jones,* 445 F.3d 865, 869 (6th Cir. 2006); *see also United States v. McBride,* 434 F.3d 470, 476 (6th Cir.2006); *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) ("[D]istrict courts are required to consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, 18 U.S.C. § 3553(a)(4), but only as one factor of several laid out in § 3553(a)."); *Booker*, 543 U.S. at 259 ("Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals"). "[T]he district court's decision to deny a Guideline-based departure . . . is not reviewable by this Court so long as the district court was aware of and understood its discretion to make such a Guideline-based departure." *McBride*, 434 F.3d at 476; *see also Jones,* 445 F.3d at 868; *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002). "Absent [an] articulation on the record that the § 3553(a) factors were considered, we are unable to review Defendant's sentence for reasonableness, and we decline to find that a sentence within the Guidelines range is reasonable." *United States v. Johnson*, 467 F.3d 559, 564 (6th Cir. 2006); *see also Cage*, 458 F.3d at 537.

In the instant case, Willis argues that her sentence "was longer than necessary to comply with

the sentencing factors outlined in 18 U.S.C. § 3553(a)." (Willis' Br. at 45) Willis argues that "because the majority of the sentence was driven by the mandatory [statutory] minimum requirements of § 924(c) . . . any sentence in excess of the mandatory minimum on the § 924(c) counts was unreasonable." (Willis' Br. at 45) Willis cites no case in support of this proposition. In this case, the record clearly indicates that the district court considered the sentencing guidelines and the § 3553(a) factors, and properly calculated Defendant's sentence. We therefore find the district court's sentence to be reasonable.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendants' convictions and sentences.