**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0244n.06

No. 19–5553

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GERSON SERRANO-RAMIREZ, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant–Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, GRIFFIN, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Gerson Serrano-Ramirez appeals his convictions for drug and gun offenses on several grounds. Finding no merit in his arguments, we affirm.

I.

A.

On July 25, 2017, staff at the Country Meadows Mobile Home Community in Nashville, Tennessee discovered a shirtless, shoeless man named Xavier Alvarado Ezcano in a state of distress and covered in bruises, claiming to have been kidnapped by MS-13. A blue USB cable was still tied around one of his wrists, and one of his fingers was "smashed." Alvarado asked to call his mother; the community manager called the police.

One week later, a group of local and federal law enforcement officers interviewed Alvarado. Alvarado told the agents that he had been tortured and interrogated by Gerson Serrano-

Ramirez at Serrano-Ramirez's residence in the Country Meadows complex. Alvarado also told the agents that Serrano-Ramirez was part of the notorious MS-13 gang. Based on this information, the officers obtained a search warrant for Serrano-Ramirez's trailer at Country Meadows and executed it on August 8, 2017.

Inside Serrano-Ramirez's residence, officers found evidence corroborating Alvarado's account of his kidnapping, including one of the shoes that he had left behind in his flight from the trailer. Officers also discovered a loaded assault rifle, ammunition, a bulletproof vest, a small amount of cocaine, digital scales, and several thousand dollars in cash. A cell phone found on the premises contained a video of Serrano-Ramirez chambering a round in the assault rifle while on the premises on August 7, 2017.

Law enforcement also found a surveillance system, which captured approximately 30 days of activity in Serrano-Ramirez's living room. The footage included Serrano-Ramirez's torturing of Alvarado. It also depicted Serrano-Ramirez participating in an apparent drug deal on July 25, 2017 and preparing what appeared to be a controlled substance for distribution on August 7, 2017.

B.

A grand jury charged Serrano-Ramirez of being an illegal alien in possession of a firearm (Count 1); illegal reentry (Count 2); tampering with a witness (Count 3); distributing and possessing with intent to distribute cocaine on July 25, 2017 (Count 4); brandishing a firearm during and in relation to the foregoing witness-tampering and drug-trafficking offenses (Count 5); possessing with intent to distribute cocaine on August 7, 2017 (Count 6); maintaining a premises

for the purpose of distributing or using controlled substances (Count 8); and two counts of possessing a firearm in furtherance of the foregoing drug-trafficking offenses (Counts 7 and 9).

Serrano-Ramirez moved to suppress the evidence obtained pursuant to the search warrant. He argued that the search warrant affidavit was insufficient to establish probable cause because it relied entirely on statements made by Alvarado, whom he characterized as an unreliable confidential informant. The district court reasoned that the affidavit included enough information about the basis for Alvarado's knowledge to establish his reliability and denied the motion to suppress. Defendant also moved under Federal Rules of Criminal Procedure 8 and 14 to sever the charges against him into three trials. The district court denied the motion, reasoning that the charges were properly joined, and that Serrano-Ramirez had not shown actual prejudice to warrant severance. Defendant also moved in limine to exclude evidence of his gang affiliation and of his prior drug sales to Alvarado under Federal Rules of Evidence 401, 403, and 404(b). The district court denied these motions too.

The case thus proceeded to trial. The government first called Special Agent Reginald Johnson of the Bureau of Alcohol, Tobacco, and Firearms. Special Agent Johnson testified that federal authorities began investigating MS-13 activity in Nashville in June 2017. As part of the investigation, he participated in the interview of Alvarado in August 2017 and in the search of Serrano-Ramirez's residence on August 8, 2017. Special Agent Johnson personally recovered the digital video recorder and Serrano-Ramirez's cell phone while executing the search warrant. After seizing these devices, he applied for and received a search warrant to extract the videos on them.

The government successfully moved for the admission of several video clips into evidence. For example, Special Agent Johnson described how, over the course of several hours, the video depicted Serrano-Ramirez loading an assault rifle, choking Alvarado with the sling of the rifle,

and using a pliers to drag Alvarado around the residence by his finger on July 25, 2017. The government also had admitted into evidence a video taken from Serrano-Ramirez's cell phone that showed him holding a different rifle in his bedroom at the mobile home on August 7, 2017. Johnson testified that the firearm depicted in the cell phone video had been recovered by law enforcement during the search the following day.

The government next called Special Agent Stanley Jones of the Drug Enforcement Agency and qualified him as an expert. Special Agent Jones testified that he had worked for the DEA for nearly 20 years and had extensive experience investigating violations of drug laws. After giving background on the sale and distribution of cocaine, Agent Jones watched several of the surveillance videos that had been admitted into evidence. He testified that Government's Exhibit 42 depicted two individuals—previously identified as Serrano-Ramirez and Alvarado—nasally ingesting cocaine. Special Agent Jones then reviewed footage of a third, unidentified individual in the trailer on July 25, 2017. Jones testified that in his opinion, the video depicted Serrano-Ramirez selling the individual a controlled substance.

Finally, Jones reviewed footage from August 7, 2017. As Jones watched the footage, he indicated that Serrano-Ramirez appeared to take batteries from a remote and insert them into what Jones believed was a digital scale. Then, as Serrano-Ramirez struck an object contained within a black bag, Special Agent Jones explained that defendant's actions were consistent with breaking apart a kilogram of cocaine. Serrano-Ramirez took the object out of the bag, placed it on the counter, and retrieved plastic baggies, which Jones understood to mean that Serrano-Ramirez intended to package the suspected cocaine into smaller quantities. Finally, Special Agent Jones explained that when Serrano-Ramirez was packing the substance into several layers of plastic bags

and then wrapping it in electrical tape, it was "consistent with the repackaging to aid in the concealment and transportation for the purpose of distribution of a controlled substance."

The government's third witness was Xavier Alvarado Ezcano. Alvarado testified that in the summer of 2017, he was working construction during the day and as a disc jockey for a bar called Bola Ocho at night. He met Serrano-Ramirez while working construction in Nashville a few years prior and considered him a friend. Serrano-Ramirez often came into Bola Ocho with other members of MS-13, and about once per week, Alvarado bought cocaine from Serrano-Ramirez while he was working.

According to Alvarado, Serrano-Ramirez and the other members of MS-13 did not cause problems at Bola Ocho at first. But, beginning in May 2017, he said "there was a lot of trouble because of the gang members." He testified that they would harass and intimidate other customers. After about three months of these problems, Alvarado told the owner of Bola Ocho that he had a relationship with Serrano-Ramirez and offered to "try to talk" to him about the problems MS-13 was causing. Alvarado believed that he and Serrano-Ramirez "had been friends for years," so Serrano-Ramirez would be receptive to his concerns. He was seriously mistaken.

Alvarado requested to meet in person with Serrano-Ramirez on July 24, 2017. They met up at a friend's house but returned to Serrano-Ramirez's trailer at Country Meadows around midnight. The pair began drinking beer and using cocaine that Serrano-Ramirez provided. Eventually, Alvarado brought up the problems at Bola Ocho and said that MS-13's presence at the bar was bad for business. Serrano-Ramirez responded that "they [the gang members] were the ones to give the orders and they could do whatever they want."

At this point, the government began playing video clips taken from the surveillance system, and Alvarado recounted how Serrano-Ramirez became suspicious of him and spent the morning hours of July 25, 2017 interrogating him about suspected cooperation with police. Alvarado reviewed footage of Serrano-Ramirez: (1) loading and pointing a rifle at him; (2) taking his watch, shoes, and phone to search for a hidden listening device; (3) asphyxiating him with a plastic bag; (4) handing him a phone and telling him to call his mother to say goodbye; (5) spraying him in the face with Clorox; and (6) dragging him around the residence by grabbing his finger with a pair of pliers and threatening to cut his finger off. But by late morning, Serrano-Ramirez decided to let Alvarado go. Before he did so, he told Alvarado that if he "spoke to police . . . about what had happened there, he would kill [Alvarado's] mother and his family."

The government next called a series of witnesses to explain how law enforcement officers investigated Serrano-Ramirez's assault and kidnapping of Alvarado. Two employees of Country Meadows testified that they encountered Alvarado and called the police. Seven additional officers testified about the ensuing investigation into Serrano-Ramirez and their participation in the execution of the search warrant for his trailer on August 7, 2017. The government then rested its case.

Serrano-Ramirez moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. After hearing from the government, the district court denied the motion. Serrano-Ramirez did not offer any proof of his own. The case was submitted to the jury, which found defendant guilty on all counts. Thereafter, the district court imposed an aggregate sentence of 228 months' imprisonment. Serrano-Ramirez timely appeals his conviction, but in doing so, does not challenge the sentence imposed by the district court.

II.

We begin by reviewing Serrano-Ramirez's arguments that the district court erred by denying his motion to sever the charges brought against him.

Federal Rule of Criminal Procedure 8 permits a single indictment to join multiple offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Whether a joinder was appropriate under Rule 8(a) is determined by the allegations on the face of the indictment." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017). "If joinder of multiple defendants or multiple offenses does not comply with the requirements of Rule 8, the district court has no discretion on the question of severance." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (internal quotation marks and citation omitted).

If joinder is proper under Rule 8, a district court may still grant a Rule 14 motion to sever if the joinder of defendants or charges "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). "Prejudice" in this context means "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Such a risk notwithstanding, the Supreme Court has emphasized that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* To clear this high bar, therefore, a defendant must show "compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever," *United States v. Ross*, 703 F.3d 856, 885 (6th Cir. 2012) (citation and brackets omitted), and we

apply the deferential abuse-of-discretion standard. *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007).

Serrano-Ramirez contends that the charges were not properly joined under Rule 8. He asserts that joinder was improper because "[o]ther than taking place in the same location," the July 25 charges and the August 7 charges had "nothing to do with one another and [were] not similar in nature." The district court rejected this argument, reasoning that joinder was proper because "all of the counts, aside from Count Two [charging illegal reentry], spring from the same factual background, are logically related, encompass interrelated offenses tied to the underlying alleged scheme of Defendant's alleged drug distribution, and require a fair amount of overlapping proof."[1]

We agree with the district court. The lynchpin in the government's case was Serrano-Ramirez's drug distribution. Alvarado purchased drugs from Serrano-Ramirez. And because of Alvarado's knowledge of his drug trafficking, defendant believed Alvarado was cooperating with police when he wanted to discuss the problems at Bola Ocho. This, in turn, led to defendant's vicious assault of Alvarado and gave rise to the charges for unlawful use of a firearm and witness tampering. And once the assault was completed, Alvarado *did* cooperate with authorities, leading to the execution of the search warrant on August 8, 2017. The fruits of that search provided evidence of the July 25 offenses and also enabled the government to charge Serrano-Ramirez with the August 7 offenses. Under these circumstances, joinder was proper. *See, e.g.*, *Thomas*, 849 F.3d at 675 ("Joinder is proper when the evidence of the counts is intertwined.").

---

[1]The district court concluded that Count Two was properly joined because the government was required to prove that Serrano-Ramirez was an illegal alien to prove Count One, and thus the proof for both charges overlapped. Serrano-Ramirez does not challenge the joinder of Count Two on appeal.

We also hold that the district court did not abuse its discretion in refusing to grant a severance under Federal Rule of Criminal Procedure 14. Serrano-Ramirez argues only in a conclusory fashion that "evidence and allegations of additional drug and weapons possession and/or sale would be highly prejudicial to him." He has not demonstrated that joinder "compromise[d] a specific trial right" or "prevent[ed] the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Tran*, 433 F.3d 472, 478 (6th Cir. 2006) ("The defendant's conclusory statement that the joinder of the counts 'affected' the jury's ability to render a fair and impartial verdict does not suffice to show substantial prejudice.").

III.

Serrano-Ramirez next argues that the district court erred by denying his motion to suppress. "When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. Legal conclusions as to the existence of probable cause are reviewed de novo. When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020) (internal quotation marks and citations omitted).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Defendant argues that the search warrant authorizing a search of his residence was invalid because the supporting affidavit did not sufficiently establish Alvarado's reliability, and therefore, did not establish probable cause. In other words, he contends that the search warrant affidavit did not give

rise to a fair probability that, given the totality of the circumstances, contraband or evidence of a crime would be found in his residence, so the search violated his Fourth Amendment rights.

We discern no Fourth Amendment violation. Rather, just as the district court concluded:

> The Affidavit contains dates, personal details about the victim and alleged perpetrator, information about the relationship between the two individuals, specific details about the alleged kidnapping and assault of the victim including the use of an assault rifle and bleach during the attack, a specific description of the victim's property that was allegedly stolen and located within the residence to be searched, the location of the residence identified by the victim, and a picture of the residence. In essence, the Affidavit exhibited on its face "the probability . . . of criminal activity." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). Where, as here, "a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *Id.*

(Footnote omitted). Serrano-Ramirez has given us no reason to reject the sound reasoning of the district court. We therefore affirm the district court's denial of defendant's motion to suppress.

IV.

Serrano-Ramirez next challenges the sufficiency of the evidence to sustain his convictions for the charges contained in Counts 4 through 9 of the indictment.[2]

A defendant claiming insufficient evidence to support a conviction "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). This is because we must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will sustain a conviction based on circumstantial evidence alone, and the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). A sufficiency claim

---

[2]Serrano-Ramirez does not contest the evidence supporting his convictions for being an illegal alien in possession of a firearm, illegal reentry, or witness tampering.

does not require us to "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).

A.

Counts 4 and 6 of the indictment charged Serrano-Ramirez with possessing with intent to distribute cocaine on July 25, 2017, and August 7, 2017, respectively, in violation of 21 U.S.C. § 841(a). For the government to prove these charges, it had to establish that, on or about the above dates, Serrano-Ramirez (1) "knowingly, (2) possessed a controlled substance, (3) with intent to distribute." *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006).

Serrano-Ramirez claims that there was insufficient evidence for a reasonable juror to conclude that he distributed or intended to distribute cocaine on July 25, 2017. He asserts that the evidence that he sold cocaine to the unidentified individual who arrived at his residence was insufficient to support a conviction. But surveillance video depicted the visitor manipulating a substance on Serrano-Ramirez's coffee table and packaging it. He then handed something to Serrano-Ramirez, which Special Agent Jones interpreted to be a "cash transaction." A rational juror could thus infer that Serrano-Ramirez distributed cocaine to the individual on July 25, 2017.

Even if this were not true, the government still proved Count 4 by establishing that Serrano-Ramirez provided cocaine to Alvarado on July 25, 2017. Alvarado testified clearly that upon returning to Serrano-Ramirez's residence, defendant placed cocaine on a plate for them to

consume. The video corroborates Alvarado's testimony. From this evidence, a rational juror could conclude that Serrano-Ramirez violated 21 U.S.C. § 841(a) by distributing cocaine to Alvarado.[3]

Regarding the August 7, 2017 offense (Count 6), Serrano-Ramirez claims that the evidence was insufficient to support his conviction because the video evidence could not establish what substance he possessed. In other words, the video showed only that defendant broke up an unknown substance, weighed and placed it into smaller plastic bags, and repackaged it in a manner "completely consistent with the repackaging of a controlled substance for the purpose of secreting it and concealing it and making it easier to transport, purchase, and sell as a package."

Special Agent Jones testified that Serrano-Ramirez's conduct was most consistent with preparing a kilogram of cocaine for sale, but that it could also have been another controlled substance or not a controlled substance at all. But, as the government notes, the video shows Serrano-Ramirez producing the substance from the same black bag where he kept cocaine on July 25, 2017. And one day later, law enforcement searched Serrano-Ramirez's trailer and found a small quantity of cocaine. A rational juror could thus conclude that the government met its burden by establishing that Serrano-Ramirez possessed with intent to distribute cocaine on August 7, 2017.

B.

The jury found that Serrano-Ramirez maintained a drug-involved premises in violation of 21 U.S.C. § 856(a) pursuant to Count 8 of the indictment. Section 856(a) provides that it is unlawful to "knowingly . . . rent . . . any place . . . for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a).

---

[3]An exchange of money is not required under 21 U.S.C. 841(a). *See, e.g.*, *United States v. Vincent*, 20 F.3d 229, 233 (6th Cir. 1994).

Defendant contends that the government presented insufficient evidence for a rational juror to conclude that a significant purpose of his residence was drug distribution. He acknowledges that the government can prove controlled substances were used at the residence but asserts that "two incidents of drug distribution or possession with intent to distribute in thirty days does not equate to a significant or important use of the premises."

This is not persuasive. The record contains ample evidence from which a reasonable juror could conclude that Serrano-Ramirez was significantly motivated to maintain his residence for drug distribution. *See United States v. Russell*, 595 F.3d 633, 643 (6th Cir. 2010) ("[T]he government need only prove that the defendant's drug-related purpose for maintaining a premises be significant or important . . . ." (internal quotation marks omitted)). As we have already explained, a reasonable juror could conclude that Serrano-Ramirez broke up and repackaged a kilogram of cocaine in the premises on August 7, 2017. Special Agent Jones testified that in the Nashville area, a kilogram of cocaine is worth between $25,000 and $30,000. Moreover, the jury could also consider that law enforcement found other indicia of drug trafficking and thousands of dollars in cash in the residence. With all this evidence, it was reasonable for the jury to conclude that Serrano-Ramirez was significantly motivated to maintain the premises for drug-related purposes. *See, e.g.*, *United States v. Elenniss*, 729 F. App'x 422, 429 (6th Cir. 2018) (concluding that presence of controlled substance and evidence of distribution like plastic baggies and digital scales sustained conviction for maintaining drug-involved premises).

C.

Serrano-Ramirez also challenges the sufficiency of the evidence for his convictions on Counts 5, 7, and 9 of the indictment, which charged violations of 18 U.S.C. § 924(c).

First, defendant argues that the evidence was insufficient to sustain his conviction for possession of a firearm in furtherance of the crimes of tampering with a witness and possession with intent to distribute a controlled substance (as charged in Count 5). He claims that the government did not prove the gun he used to threaten Alvarado was a real "firearm."

Section 924(c) "requires that the gun used be real." *United States v. Harris*, 733 F. App'x 237, 239 (6th Cir. 2018). But our court has held that lay opinion testimony may be sufficient proof to establish the authenticity of the firearm. *See id.*; *see also United States v. Willis*, 232 F. App'x 527, 537 (6th Cir. 2007) (affirming conviction under § 924(c) based on the testimony of employees that the defendant brandished a firearm during robberies).

Here, Alvarado testified that he watched as Serrano-Ramirez loaded the rifle with a magazine before pointing it at him and threatening to shoot him. Alvarado also testified that he was familiar with the gun, having seen it around the trailer previously. From Alvarado's testimony, a reasonable juror could conclude that Serrano-Ramirez possessed an actual firearm on July 25, 2017, and thus, the government met its burden to sustain Serrano's conviction under 18 U.S.C. § 924(c). *See Harris*, 733 F. App'x at 239; *see also United States v. Crowe*, 291 F.3d 884, 887 (6th Cir. 2002) ("[T]he mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility." (citation omitted)).

Serrano-Ramirez also contends that the evidence was insufficient to sustain the jury's findings on Counts 7 and 9, which charged him with knowingly possessing a firearm in furtherance

of drug-trafficking crimes on August 7, 2017. Defendant's argument hinges on whether the government introduced evidence that his possession of a firearm was "in furtherance" of the drug trafficking crimes. In other words, if all that was established at trial was the "possession of a firearm on the same premises as a drug transaction . . . without a showing of a connection between the two," then the government did not establish that Serrano-Ramirez's possession of the rifle was "in furtherance" of the drug trafficking crimes.

To be considered "in furtherance" of a drug-trafficking crime, the firearm "must be strategically located so that it is quickly and easily available." *United States v. Mackey*, 265 F. 3d 457, 462 (6th Cir. 2001). "Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.*

Contrary to Serrano-Ramirez's argument, the jury reasonably found that the firearm he possessed was in furtherance of his drug-trafficking crimes because the government introduced evidence to support each of the *Mackey* factors. First, the gun was loaded, and a rational juror could conclude that Serrano-Ramirez strategically kept it in his bedroom, where it was easily accessible and near his stash of cocaine. Second, when officers searched the trailer, they also found a ballistic vest, loaded magazines, and additional ammunition in the bedroom. Third, it was unlawful for Serrano-Ramirez to possess the rifle because he was "an alien . . . illegally or unlawfully in the United States." *See* 18 U.S.C. § 922(g)(5)(A). This constellation of circumstances allowed the jury to conclude that "the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested." *Mackey*, 265 F.3d at 462–63.

In sum, when viewed in the light most favorable to the government, the evidence supported the jury's findings regarding each of the challenged convictions.

V.

Finally, Serrano-Ramirez appeals evidentiary rulings made by the district court. Specifically, he claims that the district court erred by denying his pretrial motion to exclude evidence of other drug sales he made to Alvarado at Bola Ocho in Summer 2017 and by allowing the government to introduce evidence of his affiliation with the MS-13 gang.

A.

Serrano-Ramirez contends that the district court erroneously admitted evidence of his prior drug sales to Alvarado under Federal Rule of Evidence 404(b). Rule 404 provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, evidence of other bad acts "may be admissible for another purpose," including motive or intent. Fed. R. Evid. 404(b)(2). A district court determines the admissibility of evidence under Rule 404(b) pursuant to a three-step process:

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (citing *United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir. 2002)).

The district court followed the three-step process. It first determined that the evidence proffered by the government was sufficient to show the other act in question—prior drug sales to Alvarado—had occurred. It then allowed the government to elicit testimony from Alvarado about

his prior drug transactions with Serrano-Ramirez for two purposes. First, the court ruled that Alvarado's testimony about prior drug sales was probative of Serrano-Ramirez's intent to distribute and/or possess with intent to distribute controlled substances. Second, the court concluded that the prior drug sales were "directly probative of [Serrano-Ramirez's] *motive* for committing the assault" because the transactions made it more likely that he had assaulted Alvarado to deter him from reporting Serrano-Ramirez's drug trafficking to the authorities. It then concluded that the probative value of the evidence was not substantially outweighed by prejudice to Serrano-Ramirez.

We review a district court's decision to admit Rule 404(b) evidence with a three-part test. *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). First, we review for clear error the factual determination that the other acts occurred. *Id.* Second, we review de novo the legal determination that the acts were admissible for a permissible 404(b) purpose. *Id.* Third, we review for abuse of discretion the determination that the probative value of the evidence is not substantially outweighed by unfair prejudicial effect. *Id.*

Serrano-Ramirez challenges the district court's factual finding that the prior drug sales occurred, arguing that Alvarado's testimony was too vague for the district court to conclude that the other drug transactions had occurred. But the government had Alvarado proffer outside the presence of the jury, and he testified that he purchased about $20 worth of cocaine from Serrano-Ramirez at Bola Ocho approximately once per week. This enabled the district court to conclude that the prior drug sales occurred.

Further, we conclude that Serrano-Ramirez has forfeited his remaining arguments for review of the district court's Rule 404(b) ruling. While defendant complains that the government did not actually need to introduce evidence of the prior drug sales to prove his intent, he does not

challenge the district court's ruling that the prior bad acts were admissible as evidence of his motive (i.e., to prevent Alvarado from reporting his drug trafficking at Bola Ocho to the police). Thus, even if we were to accept that intent was not a proper purpose, Alvarado has forfeited his challenge to the second prong of the analysis. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310–11 (6th Cir. 2005). Similarly, Serrano-Ramirez claims that the prior bad acts evidence was far more prejudicial to him than it was probative of his intent to possess cocaine. But again, defendant does not challenge the district court's ruling as to motive, which constitutes forfeiture. *See id.* For these reasons, we affirm the district court's denial of Serrano-Ramirez's motion to exclude prior bad acts evidence.

B.

Serrano-Ramirez also argues that the district court abused its discretion by allowing the government to introduce evidence of his affiliation with MS-13 because it was not probative of any material fact at trial. He claims that there was no connection between his involvement in MS-13 and the crimes charged, so admitting evidence to that effect was unduly prejudicial under Federal Rule of Evidence 403.

"Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case." *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2007); *see also United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue." (citation omitted)). Gang relationships may also be probative of motive because they may help explain "why [a defendant] did what he did." *United States v. Mooney*, No. 03-6050, 2005 WL 8159085, at *5 (6th Cir. Jan. 12, 2005).

Here, the district court determined that evidence of Serrano-Ramirez's affiliation with MS-13 was relevant to the witness-tampering charge:

> Understanding why Defendant "did what he did" is at the heart of the witness tampering charge . . . . Put simply, the Government charged Defendant with [witness tampering] because it believes that [Alvarado] confronted Defendant about the effect of his gang-based drug distribution activities and Defendant took him for an informant.

We agree that Serrano-Ramirez's gang affiliation was probative of his motive for assaulting Serrano-Ramirez. We also conclude that introducing evidence of Serrano-Ramirez's gang affiliation did not violate Federal Rule of Evidence 403. Evidence of defendant's involvement with MS-13 was a key element of the government's case; it believed that Serrano-Ramirez assaulted Alvarado "with the intent to hinder, delay, and prevent the communication to a law enforcement officer . . . of information relating to the . . . racketeering activity of . . . MS-13." Therefore, "while evidence of [Serrano-Ramirez's] gang affiliation [was] certainly prejudicial to his case, given the probative value of this evidence, we cannot say that the probative value [was] *substantially* outweighed by unfair prejudice." *United States v. Peete*, 781 F. App'x 427, 442 (6th Cir. 2019) (concluding that evidence of gang affiliation was admissible to show evidence of motive for possessing a firearm with an obliterated serial number). That is particularly true, where, as here, the district court gave appropriate limiting instructions. *Id.* at 442–43. Considering all of the factors discussed above, we conclude that the district court did not abuse its discretion in admitting evidence of Serrano-Ramirez's gang affiliation under Rule 403.

## VI.

For these reasons, we affirm the judgment of the district court.

-19-