### III.  CONCLUSION

The judgment of the district court is **AFFIRMED.**

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0124P (6th Cir.)
File Name:  00a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    *v.*                              Nos. 98-6044/
                                                      6048/6216

JAMES D. MARKS (98-6044),
MAURICE NAVARRO BROOKS
(98-6048), ROBERT LEE
AGUON (98-6216),
          *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 97-00024—Thomas B. Russell, District Judge.

Argued:  January 25, 2000

Decided and Filed:  April 6, 2000

Before:  NELSON, SUHRHEINRICH, and GILMAN,
Circuit Judges.

———————

#### COUNSEL

**ARGUED:**  Armand I. Judah, Louisville, Kentucky, Michael L. Boylan, Louisville, Kentucky, Vincent F. Heuser, Jr., Louisville, Kentucky, for Appellants.  Terry M. Cushing,

ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Armand I. Judah, Louisville, Kentucky, Michael L. Boylan, Louisville, Kentucky, Vincent F. Heuser, Jr., Louisville, Kentucky, for Appellants. Terry M. Cushing, David J. Hale, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

SUHRHEINRICH, Circuit Judge. Defendants Maurice Navarro Brooks, James Marks, and Robert L. Aguon appeal their jury convictions and sentences on multiple counts of bank robbery, armed bank robbery, and carrying a firearm during a crime of violence. Defendants raise seven issues.

**I. BACKGROUND**

Brooks committed nine armed bank robberies in and around Louisville, Kentucky, from July through December 1996. Nine people were charged with either participating directly in the robberies or with assisting the principals at different times. Marks allegedly participated in seven of the robberies but was convicted of only six. Aguon participated in the last two robberies.

Brooks, Marks, Aguon, and Bernard Williams committed the ninth robbery on December 20, 1996. As they were leaving the bank, a Louisville police officer drove into the bank parking lot. The four robbers split into pairs. Brooks and Williams fled in Williams' car but were arrested after a high speed chase. Immediately after Brooks' arrest, he asked a police officer how much time he would get and commented that the officer did a "good job."

Meanwhile, Marks and Aguon entered a nearby flower shop where Marks called his stepmother for a ride and bought her

proceedings, competency examinations, and other procedural matters. *See* 18 U.S.C. § 3161(h).

Aguon raised the Speedy Trial Act issue on the morning of trial and asked the court to dismiss the case against him, which the court denied. After admitting that he filed motions and requests for his own benefit that would have tolled the Speedy Trial Act, Aguon simply asserts that "the delay in bringing him to trial was a violation of the act . . . ." (Aguon's Brief at 18). Aguon does not specify which part of the delay violated the Speedy Trial Act.

In this case, the district court made several Speedy Trial findings: (1) after Brooks moved to continue the original sentencing date, (2) after change in counsel for a codefendant, (3) after the district court granted Defendants' motions to withdraw their pleas, and (4) after the district court severed Aguon and Myles' trial from Brooks and Marks' trial. The district court found that the case as to Aguon and Myles was complex because of the withdrawal of the plea, the severance order, and the Government's difficulty in compelling the testimony of Defendants who were already sentenced.

Defendants withdrew their guilty pleas on March 17, 1998, which became the day of their indictment for Speedy Trial Act purposes. *See* 18 U.S.C. § 3161(i); *United States v. Bond*, 956 F.2d 628, 630 (6th Cir. 1992). Brooks and Marks were tried on May 19, 1998, and Aguon's trial was severed on the same day. Aguon's trial started July 6, 1998. However, the district court first decided Aguon's motion to suppress the testimony of witnesses with plea agreements.

Most of the delay was caused by Defendants changing their pleas and filing pretrial motions, all of which Aguon appears to admit. As to the other delays, the district court made appropriate findings to exclude the delays. Accordingly, the district court did not err in denying Aguon's motion to dismiss under the Speedy Trial Act grounds.

To suppress evidence of a pretrial identification, a defendant must first show that the procedure was impermissibly suggestive. If a defendant shows this, then the district court must evaluate the totality of the circumstances to determine whether the identification was reliable. *See Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994); *see also United States v. Causey,* 834 F.2d 1277, 1286 (6th Cir. 1987).

The district court reviewed the photographic array before the trial and concluded that the photographic lineup was not impermissibly suggestive. During the trial, the court required the Government to voir dire the witness from the flower shop outside the presence of the jury to establish a foundation for her testimony about her pretrial identification of Aguon. During the voir dire, the witness testified that she was shown the photographic lineup, filled out an identification sheet, and signed it, indicating her identification of Aguon. The witness essentially repeated this testimony for the jury. The investigating police officer testified that he used standard procedures.

Because Aguon failed to demonstrate that the procedure utilized by the Louisville Police Department was unduly suggestive, the testimony and evidence of the pretrial identification of Aguon was properly admitted.

**G. Speedy Trial Act.** Aguon claims that the delay of over two years in trying him violates the Speedy Trial Act. The Court reviews the district court's interpretation of the Speedy Trial Act *de novo* and its factual findings for clear error. *See United States v. Carroll,* 26 F.3d 1380, 1390 (6th Cir. 1994).

The Speedy Trial Act requires that a defendant's trial begin within seventy days of the filing date of the indictment or arraignment, whichever is later. *See* 18 U.S.C. § 3161(c)(1). However, the seventy-day rule is subject to excludable periods of delay for consideration of motions, pretrial

a stuffed animal. She picked them up at the florist and drove them to her home. Later, an employee of the florist also found a bag of money on the premises. A few days after the robbery, the flower shop employees identified Marks and Aguon from standard photographic lineups. However, one employee could not identify Aguon.

After leaving the Marks' home, Marks and Aguon traveled to Oklahoma where they stayed with William Hayes. Hayes later testified that Marks and Aguon said that they robbed a bank.

Marks and Aguon were apprehended and arraigned on March 19, 1997. Brooks was arraigned on March 26, 1997. The court scheduled trial for all three defendants for May 19, 1997. Before trial, Defendants filed several motions. Aguon moved for discovery, to suppress photographic identification, to sever, and to enlarge time to file additional motions. Marks also moved for discovery and to sever both defendants and offenses. The district court judge denied the motions to suppress, sever, and for discovery.

After Brooks' original counsel withdrew on April 23, 1997, Brooks' new attorney moved to continue the trial, which the district court rescheduled to August 18, 1997. The district court also made Speedy Trial Act findings. On July 16, 1997, the case was reassigned to another district judge. Brooks then moved to sever, to suppress evidence, and to exclude two of his prior statements. Aguon also moved to exclude his statements when he was arrested and to suppress the photographic lineup identification. The district court denied all these motions.

On August 18, 1997, the morning of trial, Marks, Brooks, and Aguon agreed to plead guilty to all counts and to cooperate completely and fully in the ongoing investigation of the nine bank robberies. The plea agreements were for specific sentences under Federal Rule of Criminal Procedure 11(e)(1)(C). If Defendants failed to cooperate fully, the

Government could move for relief from the agreement. The district court accepted the pleas and set sentencing for each Defendant for November 7, 1997.

On October 22, 1997, the Government moved to continue the sentencing because Defendants had not completed their cooperation under the plea agreements. Marks objected to the continuance. Defendants Brooks and Marks responded that they were dissatisfied with their plea agreements and moved to withdraw their guilty pleas. After the district court advised Brooks and Marks of their possible sentences, they reconsidered and maintained their guilty pleas. The district court reset Defendants' sentencing to February 2, 1998.

In early December, 1997, Codefendant James Myles, previously a fugitive, was arrested. His trial was set for March 26, 1998. The Government again moved to continue Defendants' sentencing because Marks and Brooks would both testify against Myles. The district court reset the sentencing of Brooks, Marks, and Aguon to April 3, 1998.

On February 27, 1998, Brooks, Marks, and Aguon jointly moved pro se to set aside their plea agreements. They claimed that the Government threatened their family and friends with prosecution if Defendants did not accept the plea bargains and that their defense counsel constantly pressured them to accept the plea agreements. On March 17, 1998, the court heard Defendants' motion and received testimony. The court rejected their claims of coercion, finding their proffered testimony not credible. The court also denied Defendants' motions for new counsel. At the hearing, the Government also stated that it would offer Defendants' incriminating post-plea statements made while they were cooperating with the Government. The district court allowed Defendants to withdraw their pleas, made Speedy Trial Act findings, and set trial for May 18, 1998.

Before trial, Brooks, Marks, and Aguon renewed several motions and also moved to suppress their incriminating post-

exchange for truthful testimony is not an illegal witness gratuity. This court's opinion in *Ware* unequivocally forecloses defendants' argument.

*Ware* was decided on December 3, 1998. Defendants submitted their proof briefs in late January of 1999, nearly two months later. They do not mention *Ware*. Instead, they excoriate the government for its use of "bribed testimony" that was "illegally obtained"—as if *Ware* had never been decided. During all of the time between the submissions of their proof briefs in January of 1999 and oral argument in January of 2000, counsel never acknowledged, as permitted by Rule 28(j) of the Federal Rules of Appellate Procedure, that *Ware* had been decided and that their argument was foreclosed as a result.

At oral argument, counsel admitted that they knew about *Ware*, but did not cite it in their briefs because they were "not sure where it would go in the appellate process." Presumably this meant that they hoped (unrealistically, in our view) that either this court en banc or the Supreme Court of the United States would overturn *Ware*. Because *Ware* is a published decision of this court directly contrary to Defendants' position, it should have been disclosed. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3(a)(3) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"); Rule 3.3(b) (providing that this duty continues "to the conclusion of the proceeding.").

**F. Photographic Identification.** Aguon claims that the district court improperly admitted evidence that a witness identified him in a photographic array. This Court reviews a district court's factual findings in a motion to suppress evidence for clear error and its conclusions of law *de novo. See United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir. 1992).

*Allen,* 160 F.3d 1096, 1106 (6th Cir. 1998); *United States v. Hudson,* 53 F.3d 744, 747 (6th Cir.1995).

Brooks and Marks did not renew their motions to sever at the conclusion of the trial and, thereby, waived the issue for appeal. However, even if the issue were preserved, the district court did not abuse its discretion because Brooks and Marks failed to show "compelling, specific, and actual prejudice." *See Sherlin,* 67 F.3d at 1215. Defendants' defenses were not mutually exclusive. Further, Brooks and Marks did not show that the jury was unable to "separate and treat distinctively evidence relevant to each particular defendant." *Medina,* 992 F.2d at 587. In fact, the jury acquitted Marks of his alleged role in the seventh robbery, as charged in Counts 20, 21, and 22 of the indictment, while convicting Brooks of his role in the same robbery. Clearly, the jury did separate and distinguish the evidence between Brooks and Marks. Accordingly, we affirm the district court's denial of Brooks' and Marks' motions to sever.

**E. Purchased Testimony.** Defendants claim that the testimony of cooperating witnesses who received favorable plea bargains in exchange for their promises of truthful testimony should have been excluded because the Government's inducement of this testimony violated the federal witness anti-gratuity statute, 18 U.S.C. § 201(c)(2). They rely on the Tenth Circuit's decision in *Singleton v. United States*, 144 F.3d 1343 (10th Cir. 1998) (holding that prosecutors' offers of favorable plea agreements in exchange for truthful testimony against accomplices or coconspirators violate the statute and must be excluded), which was vacated by the en banc Tenth Circuit within two weeks of the date it was filed and ultimately repudiated. *See Singleton v. United States*, 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied*, 119 S. Ct. 2371 (1999). In *United States v. Ware*, 161 F.3d 414 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1348 (1999), this court, like every other circuit to have considered the issue, rejected the Tenth Circuit panel's analysis and concluded, among other things, that a prosecutor's offer of leniency in

plea statements. The Government moved to admit the statements, which the district court granted. The court concluded that the exclusionary provision for statements made during plea discussions did not apply to post-plea statements and that Defendants' post-plea statements were otherwise voluntary and, therefore, admissible.

The court also found joinder of Brooks, Marks, Aguon and Myles proper under Federal Rule of Criminal Procedure 8. The district court denied Brooks' motion to suppress his post-arrest statement, "How much time am I going to get for this?" because Brooks did not show that the statement was involuntary. The district court denied Aguon's motion to suppress a photographic identification of him by an employee of the flower shop. Finally, the district court denied Marks's, Brooks's, and Aguon's objections to the Government's intention to introduce evidence of prior bad acts.

On May 19, 1998, the morning of trial, the court reconsidered severance and severed the trial of Aguon and Myles from the trial of Brooks and Marks, with appropriate Speedy Trial Act findings. Brooks and Marks were tried beginning May 19, 1998, and convicted on May 29, 1998. Marks was sentenced to 1875 months, and Brooks was sentenced to 2722 months. The court later corrected their sentences under *United States v. Sims,* 975 F.2d 1225 (6th Cir. 1992), and reduced them by 480 months to 1395 months and 2242 months respectively.

On July 6, 1998, the morning of trial, Aguon moved to suppress the testimony of witnesses who testified pursuant to plea agreements, which the court denied. Aguon also moved to suppress his post-plea statements to the FBI claiming that they were not voluntary. After taking testimony, the court denied the motion. The jury convicted Aguon on all counts. The district court sentenced Aguon to 438 months.

## II.  DISCUSSION

**A. Suppression of Post-plea Incriminating Statements.**
Defendants contend that their post-plea statements should
have been excluded.  This Court reviews factual findings
about a confession for clear error, but reviews the ultimate
question of voluntariness *de novo*.  *See United States v.
Wrice,* 954 F.2d 406, 410-11 (6th Cir. 1992).

Federal Rule of Criminal Procedure 11(e)(6) treats the
inadmissibility of pleas, plea discussions, and related
statements:

> Except as otherwise provided in this paragraph, evidence
> of the following is not, in any civil or criminal
> proceeding, admissible against the defendant who made
> the plea or was a participant in the plea discussions:
>
> (A) a plea of guilty which was later withdrawn;
>
> (B) a plea of nolo contendere;
>
> (C) any statement made in the course of any proceedings
> under this rule regarding either of the foregoing pleas; or
>
> (D) any statement made in the course of plea discussions
> with an attorney for the government which do not result
> in a plea of guilty or which result in a plea of guilty later
> withdrawn.

Fed. R. Crim. P. 11(e)(6).

After Defendants entered their plea agreements, FBI
Special Agent Wight spoke to the Defendants with their
defense counsel either present or informed of the interview.
The court cautioned Defendants about the possible admission
of their post-plea statements when they moved to withdraw
their pleas.

and that the district court erred by not instructing the jury that
they were permitted—but not required—to find that banks
located in Louisville are also located in the Western District
of Kentucky, it is difficult to imagine any error that would be
more clearly harmless beyond a reasonable doubt.

The Government also established through the testimony of
bank employees in both trials that the banks were federally
insured.  In Aguon's trial, the Government also submitted
certificates of insurance for the banks from the Federal
Deposit Insurance Corporation ("FDIC").  At trial, none of the
Defendants challenged the federally insured status of the
banks.

This Court has held similar evidence as sufficient proof of
a bank being federally insured.  *See United States v. Wood,*
780 F.2d 555, 556-57 (6th Cir. 1986) (holding that the
unrebutted testimony of a bank security officer was
sufficient).  *See also United States v. Harris,* 165 F.3d 1062,
1066 (6th Cir. 1999); *United States v. Rowan,* 518 F.2d 685,
692-93 (6th Cir. 1975).  Considering this evidence in the light
most favorable to the Government, we find that there was
sufficient evidence for the jury to find beyond a reasonable
doubt that the robbed banks were federally insured.
Accordingly, we reject this claim of error.

**D. Severance.**  Defendants Brooks and Marks claim that
their joinder was prejudicial to their defenses.  To prevail on
a claim of misjoinder, a defendant must show compelling,
specific, and actual prejudice from the misjoinder of
defendants or offenses.  *See United States v. Sherlin,* 67 F.3d
1208, 1215 (6th Cir. 1995); *United States v. Epley,* 52 F.3d
571, 578 (6th Cir. 1995); *United States v. Medina,* 992 F.2d
573, 587 (6th Cir. 1993).  This Court reviews denial of
severance motions for abuse of discretion.  *See Zafiro v.
United States,* 506 U.S. 534, 541 (1993); *Sherlin,* 67 F.3d at
1215.  A motion to sever must be renewed at the close of
evidence to be preserved for appeal.  *See United States v.*

508 U.S. at 137. The Sixth Circuit has upheld similar mandatory minimum sentences involving firearms. *See, e.g., United States v. Duerson,* 25 F.3d 376 (6th Cir. 1994) (157 months for robbery with short barrel shotgun). Accordingly, we find that Brooks' and Marks' sentences did not violate the Eighth Amendment.

**C. Proof of Venue and Federal Insurance.** Defendants claim that the Government did not prove the elements of venue and the federally insured status of the robbed banks. Brooks and Marks moved for acquittal at the close of proofs arguing that the Government failed to prove the venue element. Aguon, however, did not raise this issue at the close of the Government's proof and thus failed to preserve it for appellate review. *See United States v. English*, 925 F.2d 154, 156 (6th Cir. 1991).

Brooks and Marks argue that even though the jury was presented with evidence that the robbed banks were located in Louisville, Jefferson County, Kentucky, no witness ever specifically testified that the banks were located in the Western District of Kentucky. The district court took judicial notice that Louisville is part of the Western District of Kentucky. Brooks and Marks argue that this was improper because Rule 201(g) of the Federal Rules of Evidence requires district courts in criminal cases to instruct the jury "that it may, but is not required to, accept as conclusive any fact judicially noticed."

We are not persuaded. For one thing, 28 U.S.C. § 97(b) specifically provides that "[t]he Western District [of Kentucky] comprises the counties of . . . Jefferson . . . [and] Court for the Western District shall be held at . . . Louisville. . . .". Thus, we seriously doubt whether Louisville's presence in the Western District of Kentucky is a "fact" of which the court needed to take judicial notice. But even if it were an issue of fact, it is certainly not one about which jurors could rationally disagree. Therefore, even assuming for the sake of argument that it was an issue of fact,

In this case, the district court found that (1) Defendants' admissions, which the Government wanted to admit, were made after Defendants' plea agreements had been finalized and entered, and (2) the plea negotiations did not extend beyond their signing and filing. The court concluded that Federal Rule of Criminal Procedure 11(e)(6) did not apply because the statements were not made during the plea discussions.

Defendants rely on *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976), and *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977), for the proposition that statements made to law enforcement officers pursuant to a plea agreement then in effect are statements "made in the course of plea discussions." Their reliance is misplaced. Congress amended Rule 11(e)(6) in 1979; it did so in part to abrogate decisions such as *Brooks* and *Herman*, because they manifested what Congress thought was a too-broad view of the plea negotiation process. *See United States v. Sebetich*, 776 F.2d 412, 421 (3d Cir. 1985) ("Prior to its amendment, the rule provided for the exclusion of 'statements made in connection with, and relevant to, any of the foregoing pleas or offers.' . . . Some courts construed this rule liberally. . . . The legislative history of the 1979 amendments manifests congressional disapproval of broad judicial constructions of the previous language, and the revision of the rule appears to have been designed specifically to avoid the result in *Herman* and other cases reaching similar results."). The Third Circuit in *Sebetich* specifically identified *Brooks* as one of the "other cases reaching similar results." *Id*. Rule 11(e)(6)(D) now renders inadmissible only statements that were "made in the course of plea discussions *with an attorney for the government* . . . ." FED. R. CRIM. P. 11(e)(6)(D) (emphasis added). FBI agents cannot negotiate plea agreements with defendants, so statements that defendants make to them are not "made in the course of plea discussions." *See Sebetich*, 776 F.2d at 422 (rejecting the arguments that self-incriminating statements made to a local police chief were protected by Rule 11(e)(6) because, among other reasons, the police chief was not an "attorney for the

government."). In any event, statements made after a plea agreement is finalized are not "made in the course of plea discussions." *See United States v. Watkins*, 85 F.3d 498, 500 (10th Cir. 1996); *United States v. Lloyd*, 43 F.3d 1183, 1186 (8th Cir. 1994); *United States v. Davis*, 617 F.2d 677, 685 (D.C. Cir. 1979) ("Excluding testimony made after—and pursuant to—the agreement would not serve the purpose of encouraging compromise").

Defendants made their statements to the FBI agent after they negotiated their plea agreements and pleaded guilty. Accordingly, Federal Rule of Criminal Procedure 11(e)(6) does not apply, and their statements were admissible. Nevertheless, even if Rule 11(e)(6) applied, admission of the statements was harmless error. *See* Fed. R. Crim. P. 52(a); *Milton v. Wainwright,* 407 U.S. 371, 377-78 (1972). There was testimony from other participants in the robberies that Defendants robbed the banks and also other circumstantial evidence that would support Defendants' conviction. Defendants did not show that, in the absence of their confessions, the evidence was insufficient.

Aguon also claims he entered the plea agreement and gave a confession because he was coerced. Generally, voluntary statements are admissible. *See Miranda v. Arizona,* 384 U.S. 436, 478 (1966). The test for voluntariness is whether the confession was the product of free and rational choice. *See United States v. Murphy,* 763 F.2d 202, 205 (6th Cir.1985). If a defendant was subject to objectively coercive activity that overcame his free will, a defendant's statement cannot be used against him. *See United States v. Rigsby,* 943 F.2d 631, 635 (6th Cir. 1991). Determining the voluntariness of a statement requires an analysis of the totality of all the circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988); 18 U.S.C. § 3501(b).

In the present case, the district court held a suppression hearing on the morning of trial and received testimony from

Aguon, his girlfriend, and Special Agent Wight. The post-plea statements were made in the presence of or with the knowledge of Defendants' attorneys. The district court did not believe Aguon's testimony that he was coerced because of the alleged threatened prosecution. Accordingly, the court found that Aguon's statements were not coerced. We find that Aguon has not shown that the district court's factual findings were clearly erroneous. Accordingly, we affirm the ruling of the district court that admitted Defendants' post-plea incriminating statements.

**B. Length of Sentences.** Defendants Brooks and Marks claim that the length of their sentences amounts to cruel and unusual punishment. Brooks and Marks essentially challenge the proportionality of the mandatory sentencing provision. A constitutional challenge to a sentence is a question of law and reviewed *de novo*. *See United States v. Lloyd,* 10 F.3d 1197, 1220 (6th Cir. 1993).

Title 18 U.S.C. § 924(c) requires enhanced consecutive sentencing for its violation. *See Deal v. United States,* 508 U.S. 129, 132-133 (1993). The Supreme Court has determined that strict proportionality between a crime and its punishment is not required. *See Harmelin v. United States,* 501 U.S. 957, 959-960 (1991) (upholding Michigan's penalty of life imprisonment without parole for possession of more than 650 grams of cocaine). The Sixth Circuit has adopted the "narrow proportionality principle" of *Harmelin*. *See United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991). Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment. *See id.*

In this case, no disparity exists between the multiple crimes and the sentence in the cases of Brooks and Marks. Brooks committed nine armed bank robberies within six months. Marks participated in six of the robberies. In a case involving similar facts, the Supreme Court held that a 105-year sentence following conviction of six armed robberies with attendant convictions under 18 U.S.C. § 924(c) is not unjust. *See Deal*,