NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0745n.06

No. 12-5137

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Aug 12, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DONNIE JONES, | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

Before:  MOORE, SUTTON, and DONALD, Circuit Judges.

**Bernice B. Donald, Circuit Judge.**  Donnie Jones appeals his convictions and sentences for conspiracy to manufacture, possess with intent to distribute, and distribute between 5 and 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841; and aiding and abetting the manufacture of methamphetamine, in violation of 21 U.S.C. § 841.  Jones raises nine claims on appeal, including Fourth Amendment claims that the district court erred by denying his motion for a *Franks* hearing and his motion to suppress the fruits of a search warrant because of the government's reliance on an undercover informant.  Jones also claims that his sentence is procedurally unreasonable because the district court miscalculated it.

We conclude that neither a *Franks* hearing nor suppression were necessary because the officers independently verified information provided by the informant, giving the magistrate judge "reasonabl[e] assur[ance] that the informant was credible and the information [was] reliable," *see United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000), and enough evidence of repeated narcotics activity to support a finding of probable cause. We further conclude that the district court properly applied sentencing enhancements for the drug quantity and firearms. Jones's other claims lack merit. We therefore **AFFIRM** the district court's judgment and sentence.

## I. BACKGROUND

In the summer of 2009, Deputy Jeff Cessna with the Sheriff's Department in Putnam County, Tennessee began working with a confidential informant named Mike Horn ("the CI") to investigate suspected drug activity by Donnie Jones and his co-defendant Philip Tabor. Deputy Cessna testified that he was aware that the CI had a criminal history and a methamphetamine ("meth") addiction. The CI told police that he had observed Jones and Tabor manufacturing meth on about fifteen occasions at Jones's residence, that Jones manufactured about twenty grams of meth two to three times per week, and that the men paid around fifteen individuals (also called "smurfs") to purchase pseudoephedrine tablets for the manufacturing process.

Over the next few weeks, at Deputy Cessna's instruction, the CI conducted five controlled meth purchases from Jones and two from Tabor. All seven controlled purchases from Jones were conducted the same way. Police would search the CI and give him pre-recorded currency and a

recording device to wear. Deputy Cessna would follow the CI to Jones's residence and then observe the trailer house from no more than 100 feet away. During the transactions, Deputy Cessna would monitor transmissions from the recording device. After the transactions, the CI would meet Deputy Cessna at a pre-determined location, surrender the purchased meth and the recording device, and submit to another search of his person and vehicle.

Through the recording device, police heard Jones say that he was not able to sell the CI as much as he wanted because he had too many other buyers, that he was going to raise his price from $125 per gram to $150 per gram, and that he would never dilute his meth with filler materials. The CI was paid $150-200 for each controlled purchase.

In August 2009, Drug Enforcement Administration ("DEA") Special Agent Billy Mundy, who also had been involved in the investigation, sought a search warrant for Jones's residence. The supporting affidavit contained information provided by the CI, including various details of the manufacturing process he allegedly observed that Agent Mundy knew to be correct methods for manufacturing meth. The affidavit stated that much of this information had been corroborated by the audio and video recordings taken during the five controlled purchases made at Jones's residence and that officers had confirmed the allegations about "smurfs" by reviewing the state pseudoephedrine purchase reports for nine of the named individuals. The affidavit also included a significant amount of general information, based on Agent Mundy's experience, regarding common practices among various narcotics traffickers. Finally, it included a list of items that Agent Mundy believed might be found at the residence, including evidence of residency, items used in meth

manufacturing, weapons, records of sales, and evidence of unexplained money. On August 19, 2009, a magistrate judge issued the search warrant.

On August 21, 2009, the DEA conducted a search of Jones's residence. DEA agents testified that as they approached the trailer house, they saw Jones go into the garage and throw something, and then they heard glass break. Tabor later testified that Jones had been on his way to the garage to return the flask that had been used that night to cook meth. Agents took Jones into custody and searched the house, where they found items used to manufacture meth on the kitchen table, including packets of pseudoephedrine and various cooking tools that later tested positive for meth. No flask for cooking the mixture was found in the house. Officers also found a handgun stuffed in between the couch cushions. Tabor and the CI were also found in the house and were taken into custody. The CI was paid $300 after the search.

Jones was charged with one count of conspiracy to manufacture, possess with intent to distribute, and distribute 50 grams or more of meth, in violation of 21 U.S.C. § 841(a)(1) and 846; five counts of possessing with intent to distribute meth, in violation of 21 U.S.C. § 841; one count of manufacturing meth, in violation of 21 U.S.C. § 841; and one count of possessing a firearm in furtherance of a drug trafficking crime, namely manufacturing and possessing with intent to distribute meth, in violation of 18 U.S.C. § 924(c).

Before trial, Jones filed a motion to suppress the evidence obtained from the search of his residence and a request for a *Franks* hearing to determine whether the search warrant was valid. He

argued that the warrant affidavit excluded essential facts such as the CI's criminal record, the CI's meth addiction, and the officer's failure to corroborate all allegations regarding the "smurfs." The district court held a suppression hearing, allowing oral argument only, and denied the motion to suppress, finding that Jones did not meet his burden to show that Agent Mundy omitted information from the warrant affidavit with the intent to mislead the judge and that there was probable cause even with the omitted information because it did not turn on collateral credibility. The court then rejected various aspects of each party's proposed jury instruction and fashioned its own.

At trial, agents testified to all of the above facts, and the government introduced photos of meth purchased by the CI and from Jones's residence as well as transcripts and recordings of the controlled purchases. Tabor also testified that he and Jones had been cooking meth together for six to seven months, making 20 to 30 grams of meth "about twice a week." He described the manufacturing process, which required pseudoephedrine, and the system the two men used to obtain pseudoephedrine tablets using "smurfs." He indicated that the men had hired the CI as their "go-for" to obtain items needed for the manufacturing process. Once the meth was cooked, Tabor and Jones would split the meth "fifty-fifty," after which Tabor would "cut" his meth by diluting it with a product called MSM 1000. To Tabor's knowledge, Jones never diluted his portion because Jones preferred to sell "pure dope." Tabor also testified that he had seen Jones selling meth while sitting on the couch next to the place where he kept the firearm, charging $150 per gram, over fifty times. Jones's residence has video surveillance and high-frequency radio scanners to monitor police activity.

The jury found Jones guilty on Count 1 for conspiracy but only found him responsible for between 5 grams and 50 grams of meth. The jury found Jones guilty of Counts 2 through 6 for distribution and possession with intent to distribute meth. On Count 7, the jury found Jones guilty only of aiding and abetting the manufacturing of meth. However, the jury found Jones not guilty on Count 8 for possessing a firearm in furtherance of a drug trafficking crime.

At the sentencing hearing, Tabor testified that the two men manufactured, on average, 10 to 20 grams of meth twice per week. Assuming Jones manufactured 10 grams of meth just one time per week, the lowest quantity suggested by Tabor, for 6 months or approximately 24 weeks, the court determined that it could reliably find that Jones was responsible for 240 grams and set the base Sentencing Guidelines level accordingly, over Jones's objection. The court applied a two-level sentencing enhancement, pursuant to Guidelines section 2D1.1(b)(1), for possession of a firearm in connection with the drug offenses because of testimony that Jones sold meth while sitting with the weapon beside him under the couch cushions, even though Jones was acquitted of Count 8.

The court also responded to Jones's objection to an Information to Establish Prior Conviction (the "Information") that the government had filed under 21 U.S.C. § 851. The Information revealed that Jones had a 1980 conviction for delivering marijuana, for which he was sentenced to thirty days in county jail and the remainder of the year on unsupervised probation. The court found that Jones did not contest the fact of the conviction, but merely that it was "so old," and that the Information did not violate due process. With an adjusted offense level of 36 and a Criminal History category

6

of II, Jones's advisory Guidelines range was 210 to 262 months. The court sentenced Jones to 210 months of imprisonment. Jones timely appeals.

## II. THE SEARCH WARRANT

Jones claims that the district court erred by denying his motion for a *Franks* hearing to determine whether the search warrant was valid and by denying his motion to suppress evidence found during the search of Jones's residence. The standard of review for both questions is the same: we review the district court's findings of fact for clear error and questions of law de novo. *United States v. Poulsen*, 655 F.3d 492, 503 (6th Cir. 2011). Where the district court has denied the defendant's motions, we review the evidence in the light most favorable to the government. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

## A. Entitlement to a *Franks* Hearing

Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), a defendant is sometimes entitled to a hearing to determine whether the warrant affidavit contains falsehoods that undermine the finding of probable cause. We refer to such hearings as "*Franks* hearings." "[T]o obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [] the false statement is necessary to the finding of probable cause." *Poulsen*, 655 F.3d at 504 (internal quotation marks omitted). Under this standard, we ask two questions: 1) whether the affidavit included a falsehood, which is a question of fact, and 2) whether, without the falsehood,

the magistrate judge would still have had a basis for concluding that there was a fair probability that evidence of a crime would be found. *Id*. at 505.

In regard to the alleged falsehood, Jones argues, as he did below, that *omissions* from the affidavit regarding the CI's credibility and the officer's corroboration of the CI's claims made the warrant improper. In the Sixth Circuit, omissions can be falsehoods under the *Franks* doctrine, but, in such cases, the defendant carries a heavier burden. *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005) (discussing omissions in a § 1983 action); *see also United States v. Abboud*, 438 F.3d 554, 574 (6th Cir. 2006) (same in criminal appeal). The defendant must make a "strong preliminary showing" that the affiant *intended to mislead the judge* by omitting information from the affidavit." *Hale*, 396 F.3d at 726-27 (emphasis added).

Indicia of an informant's credibility are certainly important in an affidavit, and the omission of known information regarding credibility can in some cases be misleading enough to be deemed a falsehood under *Franks*. For example, we have held that an affidavit contained falsehoods where the testifying officer omitted the known fact that independent investigations either failed to corroborate or undermined an informant's claims. *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008). However, not all omissions regarding credibility rise to that level. For example, we found no falsehood where an affidavit omitted some information on credibility but included information on payments to, and the criminal history of, the informants. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). We have established no clear list of what information the affiant must include, but the general idea is that the "issuing judicial officer [must be] reasonably assured that the

informant was credible and the information reliable." *See United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). For example, in *United States v. Fowler*, 535 F.3d 408, 414-15 (6th Cir. 2008), we found sufficient indicia of credibility where the affidavit stated that the testifying officer had worked with the informant for a period of time and that the officer had independently verified much of the information provided by the informant, such as names, locations, and other specific details of criminal activity. And, of course, under *Poulsen*, the omitted credibility information must have been material to the finding of probable cause to warrant a *Franks* hearing. 655 F.3d at 504-05.

According to Jones, the affidavit here omitted information on the CI's criminal record of violent offenses and attempted rape, the CI's meth addiction, and the fact that the CI was paid for working with the police. Jones also points to the omission of lab reports showing that the meth the police acquired from the CI weighed less than the 1 to 2 grams purchased, suggesting that the CI was ingesting some of the drugs himself, a suspicion that could have been confirmed by Deputy Cessna at a *Franks* hearing. The exclusion, he argues, was misleading and prevented the magistrate judge from evaluating the totality of the circumstances, taking the CI's credibility into consideration. Jones also suggests that the affidavit excluded the fact that the officers were unable to corroborate the CI's claims that Jones himself used "smurfs" to obtain pseudoephedrine tablets for the meth manufacturing process, but he does not support this assertion. If the CI's credibility regarding allegations of meth manufacturing had been appropriately undermined, he argues, there would have been no finding of probable cause because the 1 to 2 gram amounts acquired during the controlled purchases are so small that they suggest sale from Jones's personal stash rather than from his

manufacturing operation. Rather than respond to the question of whether the omissions were intentional or misleading, the district court found that the credibility issues were collateral to the finding of probable cause, which was based on the five controlled purchases of meth from Jones's residence and the fact that the affiant had reviewed audio and video recordings of the purchases.

Looking at all the facts included in and omitted from the affidavit regarding the CI's credibility, we conclude that Jones has not made a strong preliminary showing that Agent Mundy intentionally misled the magistrate judge or that the judge was not reasonably assured that the information was credible. Although the affidavit did not include information on the CI's meth addiction or criminal history, it contained other information suggesting that the information was credible. The affidavit said that the CI described the meth manufacturing process he had observed at Jones's residence and that Agent Mundy knew these to be correct methods. It also described the five controlled meth purchases, themselves corroborating the CI's claims that Jones sold meth from his residence, and it claimed that audio and video recordings from those purchases at Jones's residence corroborated additional information.[1] It further explained that officers had confirmed that nine of the fifteen named "smurfs" had recently purchased significant amounts of pseudoephedrine. A simple reading of the affidavit suggests that the officers chose to collect their own information rather than rely on the word of the CI alone and that they had found the CI's statements to be

---

[1]While the affidavit is not specific as to what information the recordings corroborated, the trial transcript shows that the recordings verified that Jones had other buyers and that he anticipated more sales in the future.

credible. The fact that the officers had not yet proven that the "smurfs" bought pseudoephedrine for Jones is obvious on the face of the affidavit, and it does not undermine the corroboration that exists.

Nor can we conclude that adding the omitted information would undermine any probable cause that otherwise existed.[2] Knowledge that the CI had a criminal record, was a meth addict, and possibly ingested some of the meth that he purchased on the government's dime does not change the fact that the affidavit included a fair amount of confirmed information on Jones's drug activity. The district court did not err in finding that a *Franks* hearing was not warranted.

Jones also raises for the first time on appeal the argument that the affidavit contained affirmative false statements that Agent Mundy expected to find a list of items used to hide large amounts of money associated with large-scale narcotics trafficking. This allegation is based on Agent Mundy's trial testimony that his recent experience suggested that most meth cooks in Tennessee live "hand-to-mouth," just barely covering their expenses. Because Jones did not raise this issue below, he has waived it unless he can show plain error that affected his substantial rights. *See e.g. United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008). To the extent that such an error could have affected his substantial rights, however, Jones has misconstrued the contents of the affidavit. Agent Mundy explained that he has a significant amount of experience with drug trafficking, and he included general information on common practices. It is clear from the face of the affidavit that the list of items that he believed might be found at Jones's residence was based on

_____

[2]We address whether probable cause existed in the next section.

11

that general knowledge. The fact that many of these items were not found at the residence or that

Agent Mundy's subsequent experience suggested that meth manufacturers near Jones have slightly

different common practices does not indicate that Agent Mundy's "expectation" was plainly a

falsehood.

**B. Denial of the Motion to Suppress**

    1. <u>Probable Cause for Warrant</u>

    Jones sought the suppression of evidence obtained from the search, arguing that the warrant

was not supported by probable cause. We will uphold a magistrate judge's finding of probable cause

if the affidavit shows that the facts and circumstances are such that a reasonably prudent person

would believe that an offense has been committed and that evidence of the offense will be found at

the specified place. *United States v. Trujillo*, 376 F.3d 593, 603 (6th Cir. 2004). We expect a

magistrate judge to make a practical, common sense decision based on all facts included in the

affidavit and to look for a "probability," not a prima facie case, of criminal activity. *Id*. We only

reverse a magistrate judge's finding of probable cause if there has been an abuse of discretion.[3]

*United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

    Jones's challenge to the magistrate judge's finding is that, stripped of the "non-credible"

statements from the CI, the only evidence against him was the fact that the CI made five controlled

---

[3]We review a district court's finding of probable cause de novo. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

purchases of meth of 1 to 2 grams each and that this is not enough to support an inference of meth manufacturing at his residence. Jones misconstrues the criminal activity at issue as well as the evidence against him. The affidavit alleged both "a continuing series of narcotics violations" and meth manufacturing at his residence. The evidence in the affidavit included: 1) the fact that the CI made five controlled purchases, during a three week period, of 1 to 2 grams of meth each from Jones's residence, 2) the audio and video recordings that had been reviewed by the affiant,[4] 3) statements from the CI that he had witnessed meth manufacturing in Jones's home and describing aspects of the process known by Agent Mundy to be accurate methods, and 4) statements by the CI that Jones had hired fifteen "smurfs" to purchase pseudoephedrine for the manufacturing process, nine of whom police confirmed were recent purchasers of various amounts of pseudoephedrine. This is sufficient to support a conclusion that a search of Jones's residence would produce evidence of narcotics offenses including meth manufacturing.

Jones relies on our holding in *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), to suggest that five purchases of meth of 1 to 2 grams each can suggest at most that he sold some meth from his personal stash. In discussing whether the good faith exception could save a warrant that was invalid due to stale information, we held in *Hython* that a single controlled purchase from the defendant at his residence was not enough to support an inference that the defendant's residence was the location of an ongoing drug enterprise. 443 F.3d at 485-87. Even assuming that the controlled

_____

[4]While the affidavit did not include statements from Jones, Agent Mundy would have heard Jones tell the CI that he could not sell as much as the CI wanted because Jones had too many other customers, that he was going to raise his price, and that he would never dilute his meth.

purchases were the only credible evidence in the present affidavit, they do not present the same

limited, out-dated evidence as in *Hython*. Jones made five sales to the same person, all out of his

residence, while alluding to future purchases and other purchasers. That is exactly the kind of

"ongoing" enterprise that was not evident in *Hython*. And again, the affidavit listed other

corroborated evidence such as the "smurf" activity. The magistrate judge was reasonable in

expecting that there would be evidence of known and suspected narcotics activity at Jones's

residence. *See also United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (noting that a judge

may infer that a criminal suspect keeps the "instrumentalities and fruits" of the crime at his residence

(internal quotation marks omitted)).

The government contends that even if there was no probable cause for the warrant, the seized

evidence would still be admissible under the good faith exception in *United States v. Leon*, 468 U.S.

897, 922 (1984). Because we conclude that probable cause existed, it is not necessary to reach this

argument.

2. Broadness of Warrant

Jones also sought suppression on grounds that the search warrant was void as overly broad

because it included a house that had been occupied by his elderly mother until her death two weeks

prior to the search, located on the same property as his trailer. We need not entertain this claim

because even if we were to agree with Jones, the appropriate remedy would be to sever the invalid

portions of the warrant. *See United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991). The

DEA agents did not actually search the house of Jones's mother, so severing that portion of the warrant would have no effect on this case.

## C. Controlled Purchases

Jones also sought exclusion of the audio and video recordings taken during the controlled purchases, arguing that his residence was subjected to an unlawful, warrantless search when the CI entered his home wearing recording devices. The Supreme Court held in *Lewis v. United States*, 385 U.S. 206, 211 (1966) that it was not an illegal search where an undercover agent entered the defendant's home at the defendant's invitation to purchase narcotics. While admitting that *Lewis* is still "good law," Jones argues that it should be revisited in light of evolving Supreme Court jurisprudence. Specifically, he points to *Kyllo v. United States*, 533 U.S. 27, 40 (2001), in which the Court held that thermal imaging of a residence without a warrant was an unlawful search, and *United States v. Jones*, 132 S.Ct. 945, 949, 954 (2012), in which the Court held that installing a GPS unit on a car without a warrant was an unlawful search. The natural implication of these new cases, he argues, is that the use of secret recording devices inside a residence without a warrant is also an illegal search.

Regardless of any argument to the contrary, so long as *Lewis* is law, we must follow it. A plurality of the Supreme Court also has held that no warrant is required where an undercover agent enters the defendant's home with consent to purchase narcotics and wears a recording device. *United States v. White*, 401 U.S. 745, 751-54 (1971). We have adopted this position. *See*, *e.g.*

15

*United States v. Yang*, 281 F.3d 534, 548 (6th Cir. 2002) (extending *White* to video recordings);

*United States v. Lippman*, 492 F.2d 314, 318 (6th Cir. 1986). There is no meritorious argument for

us to address here, and we deny this claim.

## III. THE JURY INSTRUCTION FOR CONSPIRACY

The indictment described Count 1 as conspiracy to "unlawfully, knowingly, and intentionally

manufacture, possess with intent to distribute, *and* distribute 50 grams or more of meth[ ]." Over

Jones's objection, the district court adopted the following jury instruction:

> Count One of the Indictment charges the Defendant with a conspiracy to commit the
> crimes of knowingly: (1) manufacturing; (2) possess[ing] with intent to distribute;
> *and/or* . . . (3) distributing methamphetamine, in violation of 21 United States Code,
> Section 846. . . .
>
> For you to find the defendant guilty of a conspiracy charge, the government must
> prove each and every one of the following elements beyond a reasonable doubt:
>
> 1. Two or more persons conspired, or agreed, to commit *one or more of the crimes
> alleged in Count One* of the indictment. . . .

(emphasis added.)

Jones argues that the court violated his Fifth Amendment right to an indictment of the Grand

Jury by replacing the conjunctive "and" in the indictment with the disjunctive "and/or" in the jury

instruction. He further argues that the indictment required the government to prove that he conspired

to commit all three underlying crimes, whereas the jury instruction required conviction where he

conspired to commit only one of the underlying crimes. "Because the correctness of jury instructions

16

is a question of law, we review them de novo." *Pivnick v. White, Getgey & Meyer, Co.*, 552 F.3d 479, 486 (6th Cir. 2009) (internal quotation marks omitted).

This claim completely lacks merit. "[A]n indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved." *United States v. Hathaway*, 798 F.2d 902, 913 (6th Cir. 1986) (internal quotation marks omitted). Thus, "an impermissible variance does not occur when, although an indictment charges several acts in the conjunctive, the district court charges the jury in the disjunctive." *Id*.; *see also United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983) ("It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively."). We deny this claim.

## IV.  SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONSPIRACY

Jones next claims that his conviction as to Count 1 should be reversed because the evidence presented to the jury was not sufficient to support a guilty verdict. When a defendant appeals on the basis that the evidence was insufficient to support a guilty verdict, our role is to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not insert our own findings of fact; rather we give full credit to the responsibility of the jury to weigh the evidence, to make credibility determinations, and to draw

inferences. *Id.* This presents a heavy burden for the appellant. *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007).

To prove conspiracy under 21 U.S.C. § 846, the government had to prove that two or more people agreed to violate the underlying drug law and that each person "knew of, intended to join, and participated in the conspiracy." *United States v. Burns*, 298 F.3d 523, 536 (6th Cir. 2002) (internal quotation marks omitted). The underlying offense under 21 U.S.C. § 841(a)(1) requires that the defendant knowingly manufactured, possessed with intent to distribute, or distributed a controlled substance.

Jones argues that the evidence was not sufficient to prove Count 1 for conspiracy to distribute, possess with intent to distribute, and manufacture meth because there is no evidence that he participated in a conspiracy to manufacture meth. At best, he argues, the evidence proves that Tabor and Jones acted independently because Tabor diluted his meth to 50% purity and sold it at $150 per gram while Jones did not dilute his meth and sold it at $125 per gram. He also argues that because he was only convicted of aiding and abetting the manufacturing of meth in Count 7, he cannot be guilty of conspiracy to manufacture meth.

Contrary to Jones's claim, the government presented direct testimony of conspiracy. Tabor testified that the two men obtained materials and cooked meth together. After the meth was manufactured, they divided the meth and Tabor would dilute his share. Even if we were to accept the argument that the two men were independent drug dealers who did not conspire to distribute or

possess with intent to distribute meth, this would not undermine the inference that the men agreed

to manufacture the meth that they cooked together. Either is sufficient to satisfy the elements of the

crime. *See* 21 U.S.C. §§ 841(a)(1), 846. Nor does the fact that Jones was only convicted of aiding

and abetting the manufacturing of meth in Count 7 undermine this inference because aiding and

abetting is also a form of "participation." *See Burns*, 298 F.3d at 536. Jones cannot meet his burden

to prove that no rational trier of fact could have found the essential elements of conspiracy beyond

a reasonable doubt. We deny this claim.

## V. SENTENCING CALCULATIONS

Jones next claims that his sentence is procedurally unreasonable because the district court

miscalculated the Guidelines range, and also that it is substantively unreasonable. *See United States*

*v. Mitchell*, 681 F.3d 867, 879-80 (6th Cir. 2012) (noting that a sentence is procedurally

unreasonable where the Guidelines have been misapplied or mis-calculated).

### A. Meth Quantity Calculation

Jones challenges the district court's decision finding Jones responsible for 240 grams of meth

and setting his base offense level accordingly. Under Section 2D1.1 of the Sentencing Guidelines,

the base offense level for a conviction under 21 U.S.C. § 841(b) is set according to the amount of

drugs involved in the offense. Where the amount of drugs seized does not reflect the scale of the

offense, the district court must "approximate the quantity of the controlled substance." U.S.

Sentencing Guidelines Manual § 2D1.1 cmt. n.5; *United States v. Sandridge*, 385 F.3d 1032, 1037

(6th Cir. 2004). The estimate must be supported by evidence with a "minimal level of reliability beyond mere allegation," and the court should err on the side of caution. *Sandridge*, 385 F.3d at 1037 (internal quotation marks omitted). We review a district court's calculation of drug quantity for clear error. *Id*.

At the sentencing hearing, the district court again heard testimony from Tabor. Tabor testified that he and Jones manufactured, on average, 10 to 20 grams of meth twice per week for approximately six months. Taking a conservative estimate of these amounts, the court calculated that 10 grams times one time per week times 24 weeks equals 240 grams of meth attributable to Jones.

Jones argues that this calculation was erroneous for two reasons. First, he argues that the amount of drugs attributable to him should have been capped by the jury verdict finding him only responsible for between 5 grams and 50 grams of meth on the conspiracy count. In *United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (en banc), we held that a district court may sentence a defendant based on acquitted conduct because the standard of proof at sentencing is the lower preponderance of the evidence standard. So long as the sentence falls within the statutory range prescribed for the jury conviction, as required by *United States v. Booker*, 543 U.S. 220 (2005), the sentencing court may take acquitted conduct into account. *White*, 551 F.3d at 386. The Supreme Court recently held in *Alleyne v. United States* that any fact that increases the mandatory minimum is an element of the crime that must be found by a jury. ___ U.S. ___, 133 S. Ct. 2151, 2155 (2013). This holding is consistent with *White*. In Jones's case, the statutory range is ten years to life

imprisonment because he has a prior drug felony conviction. 21 U.S.C. § 841(b)(1)(B)(viii). His 210 month sentence fits comfortably within the statutory range. Jones's argument has no merit.

Second, Jones argues that even under a preponderance of the evidence standard, 19.2 grams was the largest quantity of meth that could be attributable to him. His calculation is based on the amount of manufacturing ingredients found during the search of his residence, which, he argues, shows that at most 5.4 grams of meth were manufactured that day. Using a purity of 89%, based on the purity range of drugs purchased by the CI, times four weeks of production, Jones arrives at 19.2 grams.[5] According to him, this is a more accurate calculation than one based on Tabor's testimony because Tabor at various times estimated as little as 10 grams and as much as 50 grams per session.

Whether we or anyone else would have used Jones's proposed calculation is not relevant to our analysis. The question is whether the district court's estimate was in clear error, and it was not. The district court was not obligated to completely ignore Tabor's testimony, which it found reliable. It also followed our instructions by estimating on the conservative side, using the lowest number of estimated weeks of production, the lowest number of sessions per week, and the lowest estimated amount per session from Tabor's testimony. We reject this claim.

---

[5]It is not entirely clear what evidence Jones has to support only four weeks of production. However, in the alternative, he argues that at six months of production, he should be responsible for at most 115.2 grams of meth.

## B. Firearm Enhancement

Jones next challenges the district court's decision to apply the Section 2D1.1(b)(1) enhancement of the Guidelines, adding two levels to his base offense level for possession of a firearm in connection with the drug offenses. According to the Application Notes, the firearm enhancement should be applied if a weapon was present during the commission of the crime unless it was "clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.11(A). We accept a district court's factual finding that the defendant possessed a firearm in connection with a crime unless it was clearly erroneous. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

Jones argues that he was improperly sentenced based on acquitted conduct because he was acquitted of Count 8 for possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). His initial arguments are based on the same erroneous view of the law as his previous sentencing claim and have no merit.

Jones also argues that even though a firearm was found between the couch cushions, it was improbable that the weapon was used in connection with any drug trafficking crime because the government did not find that the enhancement applied to Tabor. Jones points to our precedent holding that possession of a firearm by one member of a conspiracy is also attributable to the other person in the conspiracy, *United States v. Chalkias*, 971 F.3d 1206, 1217 (6th Cir. 1992), but he takes the incorrect inference. All this means is that a firearm attributable to Jones or Tabor could

have also been attributed to the other. It does not mean that the court may not find a firearm attributable to one member of the conspiracy simply because it did not find it attributable to another member of the conspiracy. The court had sufficient evidence to support the conclusion that Jones possessed a firearm in connection with a drug offense and not enough evidence to make that conclusion "clearly improbable." We reject this claim as well.

## C. Substantive Unreasonableness

Finally, Jones claims that the district court's decision to impose a 210 month sentence was substantively unreasonable. We review substantive unreasonableness claims for an abuse of discretion. *Mitchell*, 681 F.3d at 879. A sentence is substantively unreasonable if "the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *Id*. at 880. We consider sentences within the Guidelines range to be presumptively reasonable. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009).

Jones's Guidelines range was 210 to 262 months. His 210 months sentence was at the bottom of that range and is therefore presumed reasonable. Jones nonetheless argues that his 210 month sentence was substantively unreasonable because his co-defendant Tabor only received a 60 month sentence for the same conduct, creating a shocking disparity and making sentence substantively unreasonable under 18 U.S.C. § 3553(a)(6). As the government points out, however, there were three major distinctions between Jones and Tabor that justified a sentencing disparity.

23

Unlike Jones, Tabor pleaded guilty, Tabor did not receive the firearm enhancement because he is not the one who kept the revolver, and Tabor cooperated with the government.[6] According to the government, Tabor's calculated Guidelines range was 121 to 151 months, and he received a downward departure for his substantial assistance. These are established and justified means for calculating a sentence, and we have no grounds to conclude that Jones's sentence was in any way arbitrary. This claim, too, is denied.

## VI. THE INFORMATION AND SUBSTANTIVE DUE PROCESS

Jones's final claim is that it was a violation of his due process rights when the government filed an Information under 21 U.S.C. § 851, revealing a 29-year-old state conviction for delivering marijuana that increased his mandatory minimum sentence from 5 years to 10 years. Jones contends that the result is manifestly unfair. We review constitutional challenges to a sentence de novo. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).

Jones presents very little legal support for his position. He cites a district court case from the Northern District of California in which the court granted a motion to strike an Information because the government punished the defendant for exercising his legal rights by making him choose between a guilty plea and an Information filing. *United States v. Jones*, 2009 WL 2912535, at *4-7 (N.D. Cal., Sept. 9, 2009). Jones does not allege that the government directly presented him with the same

---

[6]While most of Tabor's record is sealed, we can infer cooperation and lack of firearm enhancement from Tabor's testimony and from allegations made by Jones.

choice, but he argues that it effectively did so because Tabor, who immediately agreed to cooperate, received much more favorable treatment and was not subject to an Information, thereby avoiding a mandatory life sentence. He also points to a dissenting opinion in *United States v. Graham*, 622 F.3d 445, 468-69 (6th Cir. 2010) noting the high social and monetary cost of using a juvenile sentence to obtain a 20 year statutory minimum for a non-violent drug offense. Finally, he cites a concurring opinion by our own Judge Merritt sitting by designation in the First Circuit, in which he agrees with the majority that an Information did not violate due process but expresses frustration over the continued use of twenty-year or more sentences for non-violent drug offenses. *United States v. Gonzalez-Ramirez*, 561 F.3d 22, 31 (1st Cir. 2009) (Merritt, J., concurring). Jones admits that the Information may have been lawful but argues that it is "simply wrong to apply under the circumstances here." Those circumstances, it would seem, are the age of the conviction and the fact that he only received one year probation for the previous offense.

Regardless of our personal beliefs as to whether filing the Information here was "simply wrong," we cannot conclude that Jones's due process rights were violated. We have no authority to modify Jones's sentence where, as he admits, the government's actions were legal. *See*, *e.g.*, *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009) (holding that mandatory minimum sentences are constitutional). More importantly, Jones was not sentenced pursuant to the applicable statutory minium but pursuant to the applicable Guidelines range, so it does not appear that the Information affected his sentence. Accordingly, this claim is denied.

## VII.  CONCLUSION

For all of the reasons explained above, we **AFFIRM** Jones's conviction and sentence in all respects.